(No. 18368.—

LENA KLATZ, Defendant in Error, *vs.* JOSEPH PFEFFER, Plaintiff in Error.

*Opinion filed December 20, 1928.*

WETTEN, PEGLER & DALE, and FRANK J. DOWD, for plaintiff in error.

LITTLE, GORDON, ADAMS & KING, and ROTHBART & LEWIS, (ROBERT McCORMICK ADAMS, EDWARD I. ROTHBART, WHARTON PLUMMER, and DWIGHT McKAY, of counsel,) for defendant in error.

Mr. COMMISSIONER CROW reported this opinion:

This cause was tried by a jury in the superior court of Cook county upon a declaration charging defendant (plaintiff in error here) with keeping a vicious dog, which bit plaintiff, (defendant in error,) to her damage of $5000. The jury found for plaintiff and assessed her damages at

$4200. On appeal to the Appellate Court for the First District the judgment was affirmed upon condition that plaintiff enter a *remittitur* of $1200, which was accordingly entered. A writ of *certiorari* was allowed to bring up the record for review.

The evidence strongly tends to prove the following facts: Pfeffer owned a summer home at Higgins Lake, in the State of Michigan, in which he kept two bulldogs, one named Higgins. In the summer of 1921 Higgins attacked and bit a Mrs. Hyde. Mrs. Hyde pushed him off and screamed, and thereupon the dog attacked her again and bit her on the thigh, through her clothing. Hearing her screams, Mr. and Mrs. Pfeffer came to her relief and took her into the house and bandaged her wounds. In June, 1922, the dog attacked a boy, jumped on him, knocked him down and scratched him on the back and face. Pfeffer interfered and drove the dog away. The evidence shows that he was kept for the protection of defendant's wife. She was left alone a great deal, her husband being away on business. The Pfeffer cottage was located about 150 yards from a dense wilderness, where bears, lynx, minks and other wild animals abound. Many strangers and fishermen were constantly in the neighborhood. The Pfeffer property was fenced with woven wire, with a barbed wire around the fence about eight inches above the top, with a four-foot gate as high as the fence. The house was set back about five feet, the distance from the gate to the front porch. There were three steps from the porch to the walk leading to the gate. There was a hook on the outer door opening from the porch to the walk. The dog was sometimes allowed on the porch, but seldom alone unless the screen door was hooked so he could not get out. When the screen door was not fastened he could go through from the porch to the yard. It was not customary at that time for the Pfeffers to keep the inner screen door between the porch and the interior of the house hooked or fastened. There was

nothing to prevent the dog from running through both screen doors, if not hooked, to the outside of the house, down the steps and along the walk to the gate.

Plaintiff lived about two blocks from the Pfeffers and became acquainted with them by passing their cottage. On several occasions Mrs. Pfeffer hailed her and asked her to come in. She was in the home once previous to the attack. At that time Mrs. Pfeffer invited her to come into the house and showed her around the house. At the time of that visit plaintiff saw a bulldog, not Higgins, which she says was a quiet, gentle dog, of which she was not afraid. She had not seen Higgins before he bit her, and at the time she was bitten did not know the Pfeffers had any other than the good dog. On the occasion of the injury, in June, 1923, plaintiff went to the Pfeffer home on an errand. On arriving at the gate she called to Mrs. Pfeffer from the road, but she did not answer. She called her again. She was outside of the yard when attacked. What then occurred is told in her own language: "She did not hear me but the dog did hear me, and he came out by the screen door. There was one jump on the door, on the fence and on my neck. Then I called out, and she came and tried to keep the dog away from me. She was not there when the dog came out. The dog bit me on the neck, on my breast and right arm." Mrs. Pfeffer's account of the attack corroborates plaintiff's account. She fainted, but when she came to, plaintiff was sitting up, rocking back and forth, "swinging the dog." She got the dog off of plaintiff and ran him to the back porch and helped plaintiff to the front porch, on to a lounge. The dog threw her to the ground, and in the struggle her hair was filled with sand from the ground on which she was thrown. She was bleeding and her clothes were in pieces. She was taken into the Pfeffer home but did not know who took her in the house. The Pfeffers washed her wounds, put bandages on them and took her to the Grayling Hospital, seventeen miles distant. She re-

mained at the hospital three weeks, where she received treatment under the care of a physician and nurses. For two weeks she was in bed, unable to walk. The third week she was able to be about. After returning home, for some time she went to the hospital every two days for treatment of her wounds. She was unable to do any work until the end of October. Her arm was stiff from the injury at the time of the trial. A physician examined her shortly before the trial and described the scars on her arm, breast, neck and legs. On one leg the flesh was bitten to the bone. The stitch scars were then visible on the neck and arm.

The first contention of plaintiff in error is that the damages are so grossly excessive as to demonstrate that the verdict was the result of passion and prejudice, and therefore the Appellate Court erred in not reversing the judgment entered upon the verdict. In *Sandy v. Lake Street Elevated Railroad Co.* 235 Ill. 194, following the decision in *City of Elgin v. Nofs,* 212 id. 20, and in *Chicago City Railway Co. v. Gemmill,* 209 id. 638, it was decided that those are questions of fact and not subject to review by this court.

Plaintiff in error at the trial sought to prove that the dog was ordinarily of a kind, gentle and playful disposition. The court sustained the objection to the evidence. This is assigned as error. There was evidence that on two occasions previous to the attack on defendant in error the dog attacked other persons and that plaintiff in error had knowledge of the fact. The purpose of proof of that character is to establish knowledge by the owner or keeper of the dog of its vicious propensity. That fact having been manifested by the action of the animal, the duty is imposed upon the owner or keeper to exercise greater caution in its control. Notice is only necessary as to domestic animals that are ordinarily of an amiable disposition, but if a dog manifests a disposition to bite persons, the owner, knowing it, is required to exercise a higher degree of control over it than if he had no knowledge of the propensity. The keeper of

an animal of a known ferocious disposition, as a lion, wolf, or other like animal, needs no notice of its disposition. The keeper acts at his peril in keeping it. The keeper would not be heard if he offered to prove that an animal of that natural disposition had never been known to manifest a vicious disposition. So, while dogs may be generally of a friendly disposition, if one manifests a disposition to attack and bite mankind, the owner or keeper can no longer rely on its being harmless and must respond in damages if it does bite or attack human beings. The fact was established that plaintiff in error's dog had attacked others and that he knew it. He will not be heard when he offers to prove that the animal had reformed. *Domm* v. *Hollenbeck,* 259 Ill. 382, relied on by plaintiff in error is not authority for the contention. In that case the evidence failed to show that the owner knew of the bad disposition of his dog. "There is no rule as to the number of instances of a mischievous disposition shown by a dog to constitute notice, and if it were proved and not denied that a dog had attacked some person or manifested a disposition to do so it might be sufficient, and evidence that he acted peaceably at some other time would not tend to disprove the specific act." That is the doctrine of the *Domm case.* The vicious disposition of the animal without proof of *scienter* of the owner or keeper constitutes the distinction between that case and this. In that case, if the vicious propensity existed, there was no proof of knowledge of it on the part of the owner. The cases of *Chicago and Alton Railroad Co.* v. *Kuckkuck,* 197 Ill. 304, *Mareau* v. *Vanatta,* 88 id. 132, and *Kightlinger* v. *Egan,* 75 id. 141, cited by plaintiff in error, do not militate against the rule. The last two cases are cited in the *Domm case* as authority supporting the rule of responsibility. In this case the evidence at least tends to establish that element. That is as far as we may inquire. The Appellate Court did not err in sustaining the ruling of the superior court.

It is contended that the trial court erred in giving to the jury the second, fourth, fifth and sixth instructions on behalf of plaintiff, being the ninth, fifteenth, sixteenth and twentieth, respectively, of the series of instructions given. The ninth instruction is substantially a copy of an instruction approved in *St. Louis and O'Fallon Railway Co. v. Union Trust and Savings Bank,* 209 Ill. 457. It relates to the value of testimony as an instrument of evidence and the elements proper to be considered by the jury in estimating and applying it. The cases cited by plaintiff in error, *Chicago Union Traction Co. v. Miller,* 212 Ill. 49, *Tri-City Railway Co. v. Gould,* 217 id. 317, and *People v. Wong,* 321 id. 181, do not support his contention.

The fifteenth instruction reads:

"The court instructs the jury that in law it is not necessary that the defendant should be proven to be the owner of the dog in question. If the jury believe from the evidence that said dog was vicious and accustomed to bite mankind and that the defendant knowingly harbored said dog upon his premises knowing said dog to be of a vicious nature and used to attack and bite mankind, and if the jury further believe from the evidence that said dog did lacerate and bit the plaintiff's throat, breasts, arm and legs, as set forth in her declaration herein, and if the jury believe that the plaintiff was in the exercise of due care for her own safety, then the jury should find a verdict in favor of the plaintiff."

The objections urged against it are that it ignores the question whether the defendant fulfilled his duty to properly restrain the dog and fails to require due care on the part of plaintiff. As to the element of due care, the jury were instructed that if they believed, among other facts, that "plaintiff was in the exercise of due care for her own safety," etc. The contention that the instruction is bad because it does not require the jury to find whether defendant had fulfilled his duty, as required by law, to properly restrain the dog, provided it was vicious and he knew it, is

not well taken. Keeping a vicious dog, knowing it to be vicious, constitutes the basis of liability of the keeper to those injured by it. Having notice of its dangerous character, the owner is in the same position as to liability as if he had kept an undomesticated animal of a like nature. He keeps it at his peril. The evidence does not disclose that defendant in error knew of the character of the dog. So far as it shows anything, it shows that she had no such knowledge. In the absence of knowledge on her part of its dangerous propensity the defense tendered was unavailing. (*Chicago and Alton Railroad Co.* v. *Kuckkuck, supra.*) If the version of plaintiff in error as to the harmlessness of the dog were true there would be no occasion for the exercise of care by defendant in error as a guard against injury by it. If there is vice in the instruction, it is not in the respect charged against it.

The sixteenth instruction reads:

"In arriving at the fact of whether or not the defendant had knowledge of the vicious character of the dog in question, if any, you will consider all of the facts in the case—such as whether the defendant knew of any acts upon the part of the dog that would indicate to the defendant that the dog would bite if he had the chance, such as attempting to bite any person without provocation, biting any person without provocation, and such similar acts, if any, in proof on the part of the dog which came under the observation of the defendant."

The vice alleged against it is that it assumes a fact. The fact which it is charged is assumed is the vicious character of the dog. The evidence disclosed that the dog on occasions previous to its attack on plaintiff had attacked others. That was evidence of its dangerous character. The previous attacks without provocation, and knowledge of them by the owner, are not denied. Indeed, the very purpose of protection by keeping bulldogs in a residence in close proximity to a wilderness infested by wild animals of the char-

acter shown by the record, and where tramps, fishermen and strangers come in numbers, shows the dogs were not kept as companions for recreation but for defense. It is admitted that they were kept for the protection of defendant's wife, her husband being away from home a great deal. If one keeps bulldogs for, and capable of, protection under those conditions, he cannot be astonished or surprised, and will not be exonerated from the consequences, if they indiscriminately attack his unoffending neighbors. The cases cited by counsel, *Lavander* v. *Chicago City Railway Co.* 296 Ill. 284, and *Grifenhan* v. *Chicago Railways Co.* 299 id. 590, assumed material facts sharply in controversy.

Instruction 20 reads:

"You are instructed if, under the evidence and instructions, you find a verdict for the plaintiff, you shall assess her damages in such sum as you may believe will compensate plaintiff, first, for her physical and mental suffering, if any, directly caused by her injuries; provided such injuries must be the direct result of the force and violence of the attack and striking by the dog; second, if injuries were caused upon plaintiff which are of a permanent character, then you may award her damages such as will reasonably compensate her for permanent injuries."

It is objected that the declaration does not aver that plaintiff's injuries are permanent, and therefore damages for permanent injury are not recoverable. Under the system of pleading at common law a plaintiff seeking to recover damages for an injury must state the facts out of which his right of recovery arises, averring that he has thereby sustained damage, stating the amount. The amount stated is the limit of recovery. Whether damages are general or special may, as to the right of recovery, be affected by the averments, (*Chicago and Erie Railroad Co.* v. *Meech*, 163 Ill. 305,) but, whether temporary or permanent, they may be assessed to the extent that the facts warrant. In *City of Chicago* v. *Sheehan*, 113 Ill. 658, it was said: "Objection

is made to the second instruction that it allows the jury, in assessing damages, to take into consideration any permanent injury the plaintiff may have sustained, and that this was erroneous because there was no allegation in the declaration of the receipt of a permanent injury. There is no force in this objection. It is enough that the declaration showed the injury received, without describing it in all its seriousness, and the recovery could be to the whole extent of the injury." The rule has been followed in *Springer* v. *Schultz,* 205 Ill. 144, and *Chicago City Railway Co.* v. *Hastings,* 136 id. 251. See, also, *Eagle Packet Co.* v. *Defries,* 94 Ill. 598.

It is further contended that the instruction is bad because it authorized the jury to award damages for mental suffering. It is said that there was no evidence that she endured mental suffering, and that whatever the jury allowed her on that account must have been the result of·pure speculation on their part. It may be said with an equal measure of truth that the estimate of physical pain and suffering, if such exist independent of mental pain, is matter of speculation, yet juries are constantly told that they may allow damages for pain and suffering as the result of injury. "The mental pain that may be considered and allowed for in this class of cases is such as is the direct result or concomitant of physical pain suffered. Mental pain is always an attendant upon severe physical pain,—such is the relation of mind and body,—and the mental pain that is the direct and necessary result of the physical pain, but not otherwise, is a proper element of damages in personal injury cases." (*Chicago City Railway Co.* v. *Anderson,* 182 Ill. 298.) The instruction complained of contained the limitations placed upon suffering as an element of damages in the opinion quoted. For neither of the reasons assigned · was it error to give the instruction. In the case cited, the Appellate Court required a *remittitur* of one-half of the

judgment below. The opinion of the Appellate Court was adopted by this court.

It is contended that the court erred in refusing an instruction in substance telling the jury that if in approaching defendant's premises plaintiff failed to exercise that high degree of care and caution which an ordinarily prudent person would exercise under the same conditions and surroundings, and that such lack of care and caution, if any, on her part was the proximate cause of the attack by the dog, the jury should find for the defendant. No authority is cited supporting the contention. The instruction was properly refused. The *gravamen* of defendant's offense in keeping the dog is that it was dangerous and he knew it. It is his knowledge of a dangerous instrumentality under his control that renders him liable to respond in damages if he permits it to exert itself harmfully against others. Before the injured party could be charged with contributory negligence,—and the contention amounts to that,—it must appear that she was apprised of the peril and heedlessly placed herself in its way. The instruction did not contain that element. It is not necessary for a plaintiff to aver and prove the exercise of care and caution for his own protection but it is matter of defense. *Chicago and Alton Railroad Co.* v. *Kuckkuck, supra.*

The nature and extent of the injuries are questions of fact, which this court will not examine. They are finally determined by the trial and Appellate Courts and we are precluded from examining them. The contention as to the character of defendant in error's injuries is for that reason not considered as a ground for review.

The judgment of the Appellate Court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*