(No. 24640.—

HAROLD CRANE *et al.* Appellees, *vs.* THE RAILWAY EXPRESS
AGENCY, INC., *et al.* Appellants.

*Opinion filed June 21, 1938.*

HILL & BULLINGTON, (K. L. RICHMOND, and A. M. HARTUNG, of counsel,) for appellants.

DRYER, BROWN & POOS, (BARTLETTE E. NUTTER, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiffs, Harold Crane, William Lauscher, Merivel Tucker, Charles E. Baker, Ralph Flynn and Emil Santiago, filed a complaint in the circuit court of Montgomery county against the defendants, the Railway Express Agency, Incorporated, and Charles M. Thomson, trustee of the Chicago and Eastern Illinois Railway Company, to recover damages for personal injuries. The jury returned separate verdicts as to each plaintiff, finding both defendants guilty and assessed the damages in favor of the plaintiffs in sums ranging from $1200 to $5000, aggregating $14,325. Motions for a new trial and in arrest of judgment were made and overruled, and judgments were rendered on the verdicts. Upon appeal, the Appellate Court for the Third District affirmed the judgments in favor of Crane and Santiago for $5000 and $2500, respectively, ordered *remittiturs* to be entered for Flynn, Tucker, Baker and Lauscher amounting to $2625, and, upon the *remittiturs* being accepted, the judgments in favor of Flynn and Tucker were affirmed

in the reduced amounts of $700 and $1500, and of $1000 each, for Baker and Lauscher. (*Crane* v. *Railway Express Agency, Inc.* 293 Ill. App. 328.) The Appellate Court has granted a certificate of importance and the cause is before us on the appeal so allowed for further review.

By their complaint the plaintiffs charged that both defendants were engaged as common carriers in interstate commerce, the express agency in the carriage and transportation of express and the railway company in the conveyance and transportation of freight and express. Pertinent facts disclosed by the complaint and the evidence are as follows: On September 19, 1935, the plaintiffs were employed by the Motor City Stables in managing, caring for and riding certain race-horses. The Motor City Stables, on the day named, applied to the express agency, at its Detroit, Michigan, office for the transportation of fifteen race-horses, certain accessories for them consisting of feed, bridles, saddles, feed-buckets, water-buckets, tubs and trunks designated as traps, and plaintiffs, as servants and attendants to the animals, from Detroit to Dallas, Texas. The express agency contracted with the applicant to carry the horses, traps and the plaintiffs for $600. This sum was paid and the horses and traps were consigned to a representative of the Motor City Stables, at Dallas. Conformably to the agreement the Motor City Stables caused the horses and traps to be loaded upon an express car of the defendant express agency in Detroit. After assisting with the loading the plaintiffs entered the express car and they were checked in by the local express agent. They and the shipment of horses were carried over the lines of the Michigan Central Railroad Company to Chicago. From Chicago the express car was sent to St. Louis over the lines of the defendant railway company on its passenger train, No. 21, under a long-term contract with the express agency. Six counts of the complaint, by appropriate allegations, charged that on September 20, 1935, while the plaintiffs, named individually in the respective counts,

were being transported as passengers for hire in the express car of the defendant express agency, over the lines of the defendant railway company near the village of Schram City, Montgomery county, Illinois, train No. 21 was so negligently and carelessly operated and managed by the defendants and their servants that it left the tracks and overturned, and, as a result thereof, through no negligence of their own, plaintiff Crane was injured and damaged to the extent of $10,000, and his five co-plaintiffs to the extent of $5000 each.

Section 7 of the contract between the express agency and Motor City Stables, a uniform live stock contract for the transportation of animals, provides that when the owner or attendant in his employ accompanies the animals he shall load and unload, take care of, feed, and water them while being transported, and that the company shall not be under any liability or duty with reference thereto, except in the actual forwarding thereof. The attendants, when transported free, are permitted to ride only in the car in which the animals are transported or in smoking cars. Section 8 declares that the shipper, in consideration of the free carriage of attendants as his agents in charge of the animals, agrees to indemnify and save harmless the company from all claims by reason of personal injuries sustained by the attendants, irrespective of whether caused by negligence. The eleventh section states the provisions of the contract shall inure to the benefit of and be binding upon the consignor, the consignee and all carriers handling the shipment. Attached to the contract described was an "Attendants' Contract," executed at the same time and place by the plaintiffs and the express company. This contract recites that the attendants, in consideration of their free transportation on the train in which the animals are transported, the transportation being performed at the request of the attendants, and it being made known to them that each express company does, by contract, agree to hold the railroad companies, over which the attendants are transported, harmless

against any injury or damage to them while being transported, as therein set forth, and then provides: "Each of the undersigned agrees that each of the carriers or railroad companies mentioned in the foregoing contract as to the transportation of the undersigned attendants is to perform a service not required of a carrier of passengers and not required of a common carrier and as to such transportation each of said carriers, express companies and railroad companies is and shall be liable only as a private carrier; and each of the undersigned attendants does severally agree to assume all risk of accident or damage to himself and does hereby release and discharge said railway express agency and any connecting express company and any railroad company which may at any time be engaged in transporting, carrying or forwarding said animals or any of them and said attendants or any of them from any and all claims, liabilities and demands of every kind, nature and description for and on account of any injury or damages to person or property of any kind or nature sustained by him * * * whether caused by negligence or otherwise."

Defendants, by their answer, denied that for any consideration they agreed to carry plaintiffs from Detroit to Dallas and averred that they were merely permitted to accompany the shipment in accordance with the "Attendants' Contract," but not as passengers for hire, and that they, defendants, agreed only to permit the plaintiffs to attend the horses so shipped without liability on their part. They answered further, denying the charges of negligence. As special matters of defense the defendants, in paragraph 1, averred that the plaintiffs, at the time of entering into the contract for the shipment of the horses and traps signed a contract with the defendant express agency, namely, the "Attendants' Contract," and that if any of the plaintiffs sustained injuries, they were, by virtue of the agreement, barred from recovery. By the fourth paragraph defendants averred, further, that prior to entering into the express car

or upon the train operated by the defendant railway company the plaintiffs executed the "Attendants' Contract" by which they specifically agreed to hold the express agency and any railroad company, over which the express car was to be transported, harmless against injuries or damage to themselves. As additional matters of special defense, defendants alleged that at the time plaintiffs' injuries were sustained the train was being operated by the railway company with due care and caution for the rights of plaintiffs and other passengers, but that as it approached a public road crossing, the negligence of one Ada Dammann in operating and driving her automobile, which collided with the front end of the engine, caused the train, including the car in which the horses were carried and plaintiffs were riding, to be derailed, and that any injuries suffered by plaintiffs were the result solely of Ada Dammann's negligence.

Plaintiffs moved to strike paragraphs 1 and 4 of the special matters of defense on the grounds, among others, that the plaintiffs were passengers for hire under the law and that the "Attendants' Contract" and, in particular, its provisions releasing the defendants from liability, was contrary to public policy. The motion was allowed and those portions of the answer were stricken.

The principal issue presented for decision is the determination of the validity of the provisions of the "Attendants' Contract" limiting liability of the defendants for damages by reason of negligence. Plaintiffs maintain that both defendants were common carriers of passengers, that they, plaintiffs, were passengers for hire under the law, and that the contractual provisions releasing defendants from liability were contrary to public policy and void. Carriers have long been classified (1) with respect to their nature or character and consequent rights, duties and liabilities, as private carriers and common carriers, and (2) with respect to the subjects of carriage, as carriers of property and carriers of passengers. (9 American Jurisprudence, Carriers, sec. 2.)

The railway company defendant, admittedly, is a common carrier of passengers. A person who travels with the consent of a railway company, in charge of live stock or goods carried by the company for him, is a passenger for hire, even when he is traveling in charge of animals on a drover's pass, the consideration being his services rendered in caring for the stock or the charge for transporting the shipment. (*Norfolk Southern Railroad Co.* v. *Chatman,* 244 U. S. 276; *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Illinois Central Railroad Co.* v. *Anderson,* 184 Ill. 294; *Illinois Central Railroad Co.* v. *Beebe,* 174 id. 13; *New York, Chicago and St. Louis Railroad Co.* v. *Blumenthal,* 160 id. 40.) In the *Lockwood case,* the United States Supreme Court decided: (1) That a common carrier cannot lawfully stipulate for exemption from responsibility, when the exemption is not just and reasonable in the eye of the law; (2) that it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants; (3) that these rules apply both to carriers of goods and carriers of passengers for hire, but with special force to the latter, and (4) that a drover, traveling on a pass for the purpose of taking care of stock on a train, is a passenger for hire. The basis of the doctrine that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation is succinctly summarized in *Santa Fe, Prescott and Phoenix Railway Co.* v. *Grant Brothers Construction Co.* 228 U. S. 177, as follows: "The rule rests on broad grounds of public policy justifying the restriction of liberty of contract because of the public ends to be achieved. The great object of the law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. A carrier who stipulates not to be bound to the exercise of care and diligence 'seeks to put off the *essential duties* of his employment.' It is recognized that the carrier and the individual customer are

not on an equal footing. 'The latter cannot afford to higgle or stand out and seek redress in the courts. * * * He prefers, rather, to accept any bill of lading or sign any paper the carrier presents; often, indeed, without knowing what the one or the other contains. In most cases, he has no alternative but to do this, or abandon his business.' *Railroad Co.* v. *Lockwood, supra,* pp. 378, 379. For these reasons, the common carrier in the prosecution of its business as such is not permitted to drop its character and transmute itself by contract into a mere bailee with right to stipulate against the consequences of its negligence."

The foregoing rule is inapplicable, as defendants assert, when a railroad company is acting outside of the performance of its duty as a common carrier. In such a case the ordinary rules of law relating to contracts control, and, as said in the *Sante Fe Railway case, supra,* "Its stipulations even against liability for its own neglect are not repugnant to the requirements of its public service. The rule extends no further than the reason for it." In short, a common carrier may, under some circumstances, act as a private carrier. *Baltimore and Ohio Southwestern Railway Co.* v. *Voigt,* 176 U. S. 498, *Long* v. *Lehigh Valley Railroad Co.* 130 Fed. 870, and *Blank* v. *Illinois Central Railroad Co.* 182 Ill. 332, cited by defendants, hold that an express messenger in charge of express matter in an express car in pursuance of a contract between the express company and railroad company is not a passenger for hire of· the latter. This court, in the *Blank case,* held that a contract between a railroad company and an express company which provided that the former should not be liable for its negligence respecting injuries to the express company's employees as a condition to granting the right to carry express on trains was not against public policy. "The messenger is not carried in the capacity of a passenger," the court observed, "but in a special car to do his employer's express business, and the common acceptation of the word 'passenger' would not embrace

such a person so engaged. We do not see how it could follow that because a person who is an express messenger might be a passenger in a passenger car he is also a passenger while doing his employer's business in the express car." Similarly, a porter employed by the Pullman Company, while riding in a Pullman car attached to a train is not a passenger of the railroad company. (*Robinson* v. *Baltimore and Ohio Railroad Co.* 237 U. S. 84.) Plaintiffs were not employees of the express agency and were not carried for the purpose of caring for the express company's goods. They were employees of the shipper and occupied the same position as persons carried with their live stock or other property and were, therefore, properly regarded not only as passengers of the railway company but as passengers for hire. Since the railway company was not acting outside the performance of its duty as a common carrier in carrying plaintiffs as passengers for hire it could not, by contract, immunize itself from negligence. The stipulation exonerating it from liability for its negligence was void. Paragraphs 1 and 4 of the special defense interposed by the defendants cannot avail the railway company.

The question remains as to whether the defendant express agency in its relation to plaintiffs was a common carrier of passengers for hire. It does not follow that because a railway company is a common carrier of passengers for hire that an express company is likewise a common carrier of passengers for hire. An express company is a common carrier of the goods which it receives and undertakes to transport. (10 Corpus Juris, Carriers, sec. 24.) In holding that an express company was not a carrier "by railroad" within the meaning of the provision of the Interstate Commerce act relating to the establishment of through routes by the Interstate Commerce Commission, (*United States* v. *American Railway Express Co.* 265 U. S. 425,) Mr. Justice Brandeis, delivering the opinion of the United States Supreme Court, said: "An express company has no rail-

road. It is served by many railroads, as it is served by water lines, by motor trucks and horses and wagons. * * * The natural meaning of the term 'carrier by railroad' is one who operates a railroad not one whose shipments are carried by a railroad." A recognized distinction obtains between the rights, duties and obligations of an express company and those of a carrier by railroad. The former cannot and does not carry passengers for hire. The reason for the rule of law restricting a common carrier of passengers for hire from limiting its liability for injuries to them, consequently, does not apply to the express-agency defendant, a carrier merely of personal property.

An analogous situation was presented in *Teeter* v. *Southern Express Co.* 90 S. E. (N. C.) 761. There, an express company contracted with a shipper of horses and mules to carry him without charge on the same car as that used for the animals. In consideration of his free transportation the shipper agreed to "assume all injury" to person or property. Teeter, the plaintiff, alleged that the stock car was full of animals, sealed up, and that there was no room in it for him, as the attendant of the stock, so that he rode in the passenger cars. He stated that the contract was honored on connecting railroads until he reached Knoxville, Tennessee, on the Southern Railway, when the conductor from that city to Asheville, North Carolina, refused to honor it, and that he thereupon paid his fare to Asheville. For declining to pay his fare from Asheville to Salisbury, the railroad company refused to allow Teeter to ride in a passenger coach and ejected him from the train. He contended that the ejection violated his rights under the written contract with the express company and entitled him to recover compensatory damages from the express company for the alleged tort. Answering the contention, the Supreme Court of North Carolina held that the express company was not liable as a joint tort-feasor with the railroad company. In pointing out that the express company was not authorized to issue

transportation over the railway and that plaintiff's remedy, if any, was for breach of contract, the court said: "An express company is not a carrier of passengers, but is a carrier of goods. The business of an express company, as usually conducted, involves continuous custody of goods received as a bailee from the time of their receipt until their final delivery, although the transportation thereof is to be effected by means of vehicles belonging to and controlled by others. [Citation] Under their charters the duties and powers of express companies are defined and do not extend to the carriage of passengers in interstate or intrastate commerce. There is nothing in this record indicating that the express company is authorized to give or sell transportation over the Southern Railway. Were it otherwise, the written contract, introduced by plaintiff, contains nothing that would on its face authorize the conductor of the railway to accept it in payment for transportation in its passenger coaches. Whatever rights the plaintiffs may have arise out of that paper writing and are *ex contractu* and not *ex delicto*. * * * He has no cause of action against the express company as a joint tort-feasor." Likewise, only a contractual right existed between plaintiffs and the defendant express agency. No care was to be bestowed upon the shipment of race-horses by this defendant. After the horses were loaded on the train they were beyond the control of the express agency. Plaintiffs, employees of the shipper, accompanied its horses to water, feed, load and unload them, and, in general, to care for them during the journey. The express agency did not operate the trains upon which they were to be carried and cannot be held liable for the negligence of the defendant railway company. Plaintiffs' action is not predicated upon the doctrine of *respondeat superior* but upon the charge that the express agency agreed to haul them as passengers and that it was responsible for the accident out of which their injuries arose. The defendant express agency was not, however, a carrier of the

plaintiffs as passengers. Manifestly, it was not a joint tort-feasor with the defendant railway company.

Plaintiffs insist, however, that the contract upon which the express agency relies, is invalid under section 1 of the Interstate Commerce act. (U. S. C. A. title 49, Transportation, sec. 1.) Paragraph 3 of the first section declares that the term "common carrier," as used in the statute, shall include express companies. The seventh paragraph of the same section provides, among other things, that no common carrier subject to the provisions of the act shall issue or give any interstate free pass, with certain named exceptions, two of which are that it may issue passes to (1) necessary caretakers of live stock, poultry, fruit, and milk and (2) employees of express cars. The term "free pass," employed in the foregoing section means not a gratuitous pass but one issued for a consideration constituting a caretaker of live stock on a freight train a passenger for hire, within the doctrine of the *Lockwood case, supra,* notwithstanding a stipulation purporting to release the carrier from all liability for any personal injuries which might be sustained. (*Norfolk Southern Railroad Co.* v. *Chatman, supra.*) The express agency, defendant in this case, however, had no authority under the law to carry plaintiffs as passengers for hire and they were not traveling in the capacity of passengers. Plaintiffs were not and could not become passengers for hire, by agreement or otherwise, of the express agency. A railroad is under a duty to carry both freight and passengers over its own lines. An express company is, on the contrary, a common carrier only of property, not of persons, or of persons and property, and no duty rests upon it to carry persons in its express cars. The contract which plaintiffs assail gave to the Motor City Stables merely the privilege to ship its property and to have several of its own employees accompany and attend the horses for the purpose of giving them requisite care. When the express agency undertook to carry plaintiffs in its express car it,

obviously, did not assume to act as a common carrier of persons. It enjoyed the privilege of entering into the "Attendants' Contract" by which it limited its liability for damage to the persons accompanying the shipment. Accordingly, paragraphs 1 and 4 of the special defense constituted a valid defense as to the defendant express agency.

The remaining contentions of the defendants will be considered only with respect to the railway company. It insists that the evidence shows the injuries suffered by plaintiffs were not caused by its negligence and, further, that its negligence, if any, was not the proximate cause of the injuries. To support the contention the argument is advanced that the derailment occurred proximately because Ada Dammann drove her car directly in front of the engine and that plaintiffs' injuries were the result of her intervening act or negligence. The question of negligence was a controverted question of fact to be determined by the jury from the conflicting testimony of the forty-six witnesses who testified in behalf of the respective parties. By its verdicts the jury found that the defendant was guilty of negligence which was the proximate cause of the injuries sustained by plaintiffs. The trial judge approved the verdicts and the Appellate Court has decided that they were not against the manifest weight of the evidence. There is, hence, no question as to negligence before us for consideration or determination. Similarly, the issue of the jury's verdicts being the result of passion and prejudice cannot be raised on the present appeal. This question of fact is not subject to review by us, even though the Appellate Court requires a *remittitur* as a condition precedent to an affirmance. *Klatz v. Pfeffer,* 333 Ill. 90.

Other errors assigned and argued are that a witness, a road foreman of engines, should have been permitted to testify and answer a question as to what caused the derailment of the engine, that two photographs of trains on the track at or near the scene of the accident should have been

admitted in evidence, and that the court erred in giving and refusing instructions. These contentions have been adequately considered and correctly decided by the Appellate Court. Our opinion will not be extended further by repetition or amplification of its disposition of those issues.

Upon the authority of paragraph (f) of section 92 of the Civil Practice act, (*Minnis* v. *Friend,* 360 Ill. 328,) the judgment of the Appellate Court is affirmed as to the defendant railway company, and the judgments of the circuit court and the judgment of the Appellate Court are reversed as to the defendant express agency.

*Affirmed in part and reversed in part.*