(No. 25081.—

WILLIAM PERRY TAYLOR, Admr., Appellant, *vs.* THE CITY OF BERWYN *et al.* Appellees.

*Opinion filed October 10, 1939.*

G<small>UY</small> C. G<small>UERINE</small>, and L<small>OUIS</small> J<small>AFFE</small>, for appellant.

WILLIAM E. OPLATKA, (GOLAN & GOLAN, of counsel,) for appellees the City of Berwyn and Thomas Bartunek; McKENNA & HARRIS, (JAMES J. McKENNA, and BURRELL J. CRAMER, of counsel,) for other appellees.

Mr. CHIEF JUSTICE WILSON delivered the opinion of the court:

The plaintiff, as administrator of the estate of Harry A. Taylor, deceased, filed a complaint in the circuit court of Cook county against the defendants, the city of Berwyn, two of its police officers, Thomas Bartunek and Frank Prazek, the Ward Baking Company and Frank Tyller, to recover damages for Taylor's accidental death. By stipulation the action was dismissed as to Prazek. The jury rendered a verdict of not guilty as to the Ward Baking Company and Tyller, but found the defendants, the city of Berwyn and Bartunek, guilty and, by separate verdicts, assessed damages in favor of the plaintiff against each of them in the sum of $10,000. Motions by the plaintiff and the city of Berwyn, respectively, for a new trial were made and overruled, and judgments were rendered on the verdicts. The city of Berwyn and Bartunek prosecuted an appeal to the Appellate Court for the First District. Plaintiff also prosecuted an appeal, captioned "cross-appeal," seeking a reversal of the judgment against the other two defendants. The Appellate Court held that the city of Berwyn and its police officers were engaged in the exercise of a governmental function at the time of the accident and reversed the judgment against the city and Bartunek, and affirmed the judgment for costs in favor of the Ward Baking Company and Tyller. (*Taylor* v. *City of Berwyn,* 297 Ill. App. 417.) We have granted the plaintiff's petition for leave to appeal and the record is submitted for further review.

On September 3, 1936, about 5:55 A. M., officer Bartunek, accompanied by officer Prazek, was driving a police

squad car west on Twenty-second street in the city of Berwyn when they received a radio broadcast from Chicago to suburban municipalities announcing that all cars should be on the lookout for a black Plymouth two-door sedan marked "Lombard Police," with two men and a woman in the car, wanted for the murder of a police officer of the village of Lombard. Bartunek and Prazek turned north on Harlem avenue and five minutes after receiving the radio call observed a dark sedan resembling the description of the Lombard police car, containing three persons, traveling at a rapid rate of speed, turn from Sixteenth street north into Harlem avenue within the corporate limits of Berwyn. The officers gave immediate chase and pursued the other car through the village of Oak Park where both cars proceeded at a high rate of speed, the pursued car being able, however, to maintain a distance of three or four blocks between the two automobiles. After the original broadcasts at 5:55 A. M. there was another broadcast at about 6:09 A. M. for a few seconds stating that the car used in the murder at Lombard had been recovered. There is no evidence as to whether the persons sought as murderers had then been apprehended. Nor does it appear that the Berwyn officers heard the later broadcast announcing the recovery of the car used in connection with the murder. At approximately 6:22 A. M., while still in pursuit of the suspected criminals in obedience to the first radio message commanding the services of suburban police officers, the Berwyn police car collided with a delivery truck of the Ward Baking Company at the intersection of Washington boulevard and Nineteenth avenue in the village of Maywood. The truck was thrown over to and upon the northwest corner of the intersection and struck Harry A. Taylor who was standing on the sidewalk. Taylor died the same day. All the territory through which the officers passed in their pursuit from Berywn to the scene of the collision in Maywood is in Cook county.

To obtain a reversal of the judgment of the Appellate Court plaintiff makes numerous contentions. His contention that the answer of the defendants, the city of Berwyn and Bartunek, did not interpose the defense of being engaged in a governmental function at the time of the accident is not well taken. Their answer averred that on the morning of the day of the accident officers Prazek and Bartunek sighted a fugitive motor vehicle containing two or three persons in Berwyn; that they pursued the vehicle several miles and at all times during the chase caused the police siren in the squad car to be sounded, and during the course of performance of their duty as police officers acted with due care and concern for the life and safety of others.

Plaintiff further contends that the operation of an automobile by police officers of one municipality while driving or cruising in another town is not a governmental function. The precise question presented is not whether the mere operation of an automobile by police officers constitutes a governmental function but whether the operation of a car by police officers of a municipality in the fresh pursuit of persons suspected of having perpetrated the crimes of murder and larceny is a governmental function. Where a municipal corporation is performing a duty imposed upon it as an agent of the State, in the exercise of strictly governmental functions, it is not liable in an action for damages for injuries resulting from the negligence of its officers or agents thereunder, unless such action is authorized by statute. (6 McQuillin on Municipal Corporations (2d ed.) sec. 2793; *Roumbos* v. *City of Chicago*, 332 Ill. 70; *Culver* v. *City of Streator*, 130 id. 238; *Aldrich* v. *City of Youngstown*, 106 Ohio St. 342; *Leckliter* v. *City of Des Moines*, 211 Iowa, 251; *Hanson* v. *Berry*, 54 N. Dak. 487.) A recognized distinction obtains in cases involving tort liability of a municipality between "governmental" or "public" functions, on the one hand,

and "private," "proprietary" or "ministerial," on the other. A municipal corporation is answerable for the negligent acts of its agents in performing a ministerial function but is not liable for the negligence of its subordinates when engaged in the performance of a governmental function. (6 McQuillin on Municipal Corporations, (2d ed.) secs. 2792, 3.) To determine whether there is municipal responsibility the inquiry must be whether the particular agents or servants for whose acts of negligence it is sought to hold the corporation are its agents and servants for the performance of a public duty imposed by law or merely for the carrying out of private functions which are for its special benefit or advantage. (*Roumbos* v. *City of Chicago, supra; Johnston* v. *City of Chicago,* 258 Ill. 494.) A city, in the use of the police powers conferred upon it by the legislature, does not act in its private capacity or in the local interest but in the exercise of a governmental function in the general public interest, and it is not liable for the negligent acts of its officers in the enforcement of police regulations enacted for the purpose of securing and preserving the safety, health, welfare and good order of the public. (*Roumbos* v. *City of Chicago, supra.*) In *Culver* v. *City of Streator, supra,* this court said: "Police officers appointed by the city are not its agents or servants so as to render it responsible for their unlawful or negligent acts in the discharge of their duties." See 4 Dillon on Municipal Corporations, (5th ed.) sec. 1656, and 6 McQuillin on Municipal Corporations, (2d ed.) sec. 2837, to the same effect. Manifestly, the operation and maintenance of the police department by a municipal corporation is an exercise of a governmental function so as to relieve it, in the absence of statutory provision to the contrary, from liability for personal injuries resulting from the malfeasance or nonfeasance of the departmental officers or employees. The Appellate Court thus correctly held that at the time of the accident the city of Berwyn and officer

Bartunek were engaged in the performance of a governmental function sanctioned by an "Act to define police districts, and the powers and duties of the police therein," (Ill. Rev. Stat. 1937, chap. 24, pars. 421, 422, p. 426,) which provides: "1. * * * That the territory which is embraced within the limits of adjoining cities, villages and incorporated towns, within any county in this State shall be a police district. 2. It shall be lawful for the police of any city, village or incorporated town in such district to go into any part of such district to suppress riot, to preserve the peace and protect the lives, rights and property of citizens, and for such purposes it shall be the duty of the mayor of any city, the president or the president and board of trustees of any village or incorporated town in such district, and the chiefs of police therein, to use the police forces under their control anywhere in such district."

*Aldrich* v. *City of Youngstown, supra,* is analogous to the case at bar. There, the plaintiff, Mary Aldrich, while a passenger in an automobile driven by her husband on one of the streets of Youngstown was struck by a police patrol wagon owned by the city, which was then being driven by a police officer answering to "a common box call." At the close of all the evidence, the defendant city moved for a directed verdict but its motion was denied. Holding that the trial court should not have submitted the plaintiff's case to the jury, the Supreme Court of Ohio pertinently observed: "The State itself has few or no police officers to enforce its laws. * * * Therefore, both at common law and in some cases by statute, this political or governmental duty has been delegated to its political subdivisions and especially to municipalities. Not only the municipality but the entire State is interested in the maintenance of law and order. * * * Its interest therein extends not only to a single community, but over the entire commonwealth. While the employment of officers for the

preservation of its peace and property may be in the hands of the municipality, the duties of those officers are in their nature State and governmental."

The contention is also made that the judgment of the Appellate Court, to the extent it reversed the judgments against the city of Berwyn and Bartunek without remanding the cause for another trial, invaded plaintiff's constitutional right of trial by jury. Where error is assigned on the denial of a defendant's motion for a directed verdict at the close of all the evidence in an action for negligence, the Appellate Court, in reviewing a judgment for the plaintiff on the verdict of the jury, may, under paragraph b of sub-section 3 of section 68 and paragraph f of section 92 of the Civil Practice act, reverse the judgment without remanding the cause where it holds there is no evidence tending to support the verdict, or where the facts raise purely a question of law. (*Darmody* v. *Kroger Grocery Co.* 362 Ill. 554.) Here, the evidence shows conclusively and without contradiction that the police squad car involved in the accident was being operated by and under the control of police officers when on duty and while the city of Berwyn was engaged in the exercise of a governmental function of the highest character. Considering the evidence in its aspects most favorable to the plaintiff, the motion to direct a verdict in favor of the defendants should have been allowed. The issue made was one of law as to whether the defendant city was operating the car in a governmental capacity and not one of fact for the jury. It follows that the Appellate Court did not err in reversing the judgments without remanding the cause.

Plaintiff insists that in any event the judgment against Bartunek must be reversed and the cause as to him remanded for another trial. The judgments against the city and Bartunek were separate and not joint and plaintiff accordingly argues that different verdicts could have been

returned as to them on the same facts. This argument is predicated on the erroneous premise that the facts might show the accident resulted from Bartunek's negligence while on a personal mission or under conditions which did not warrant him going beyond the jurisdiction of the city of Berwyn. The argument falls for the reason that the evidence conclusively shows that at the time of the accident Bartunek was in the performance of his duty as a police officer of the city. Nor is plaintiff in a position to complain with respect to asserted inadequacies in the statement of errors relied upon for reversal in the city's brief filed in the Appellate Court. Section 76 of the Civil Practice act, (Ill. Rev. Stat. 1937, chap. 110, par. 200, p. 2410,) so far as relevant, provides: "An appeal shall be deemed perfected when the notice of appeal shall be filed in the lower court. After being duly perfected no appeal shall be dismissed without notice, and no step other than that by which the appeal is perfected shall be deemed jurisdictional." Notice of appeal was filed by Bartunek and the city in the office of the clerk of the circuit court within the prescribed period of time. Since the statute ordains that no step other than notice of appeal is jurisdictional the determination of whether the method of stating and arguing the issues sufficiently presents them for decision rests in the discretion of the reviewing court. So far as the record discloses plaintiff did not seek to have the appeal dismissed as to Bartunek in the Appellate Court and the cause was argued, considered, and decided on its merits. Plaintiff himself made Bartunek a party to his "crossappeal" and in his brief expressed his theory as to the defendants, the city of Berwyn and Bartunek, as follows: "That the city of Berwyn's police officers were not engaged in pursuit, but were merely cruising and, consequently, not engaged in a governmental function." For the reason that Bartunek was actively engaged in the per-

formance of a governmental function on behalf of the city of Berwyn at the time of the collision, the judgment of the trial court as to him was erroneous, and, in the absence of a motion to dismiss the appeal for failure to comply with some rule of the Appellate Court, properly reversed.

The remaining contentions of the plaintiff urge a reversal of the judgment of the Appellate Court as to the Ward Baking Company and Tyller, and will be considered only with respect to them. His principal contention is that the verdict of the jury finding the Ward Baking Company not guilty resulted from the false testimony of two witnesses and that, therefore, his motion for a new trial as against the company should have been granted. Upon the conclusion of the presentation of testimony, one of plaintiff's attorneys announced that the presence of Catherine Novy, a witness *subpoenaed* by the company who had testified in its behalf on the previous day, was again required, and made a motion to be permitted to show that Mrs. Novy made a statement outside of court at variance with her testimony upon the trial. The motion was supported by an affidavit of attorney Louis Jaffe stating that after the close of all the evidence he learned that "Kathryn Novy" had made and signed a statement to an investigator of the Chicago Surface Lines (employer of the deceased) dated September 3, 1936, which, it was alleged, demonstrated her testimony was false. The accident, as previously narrated, occurred the day last named, plaintiff filed his complaint September 25, 1936, and the trial did not commence until a year later, September 27, 1937. The record fails to show that Catherine Novy herself admitted signing the statement attributed to her or that any other person testified as a fact that she signed the statement. An examination of the affidavit merely discloses that the affiant claims to have learned the witness had made and signed a statement for

the Chicago Surface Lines. The attorney did not state that he was familiar with her signature, and, further, the affidavit fails to narrate circumstances attending the procuring of Mrs. Novy's alleged signed statement. Moreover, the record fails to show that plaintiff made any effort by *subpoena,* or otherwise, to require Mrs. Novy to return to the witness stand. After motions by Tyller and the Ward Baking Company for a directed verdict were made and rulings thereon reserved, a colloquy ensued in which attorney Guerine stated he was making a motion, if he could obtain the presence of Mrs. Novy to testify by the opening of court at 2:00 o'clock, for permission to show that she had signed the statement previously described. The court thereupon announced that a ruling on the motion would not be made and suggested that attorney Guerine *subpoena* the witness, if he desired to further question her. The latter replied: "If we can get her here. We have two hours." Adjournment was thereupon taken until 2:00 o'clock of the same day. Although Mrs. Novy, upon direct examination, had given her residence address in Maywood, the record is silent with respect to any efforts on the part of plaintiff or his counsel to procure her presence in court for interrogation at the afternoon session. Indeed, the record discloses that no further mention of this matter was made when court resumed later in the day. It thus appears that the time requested and given was not used for the purpose sought. Plaintiff's complaint that another witness testified falsely rests solely upon the allegations of attorney Jaffe's affidavit with respect to statements alleged to have been made by the witness, a boy sixteen years of age at the time of the trial, to a police officer of the village of Maywood and to the plaintiff himself. The purported discrepancies were brought out during the trial and the straightforward explanation made by the witness was apparently accepted by the jury. Denial of the motion for a new trial as against the Ward Baking Company on

the ground that witnesses had testified falsely was a legitimate exercise of the trial court's sound judicial discretion.

Complaint is made that the trial judge's attitude was prejudicial to plaintiff. During the course of the trial heated statements made by attorneys representing not only the baking company but also the plaintiff impelled the judge to remark that unless the attorneys conducted themselves properly it would become necessary to fine one of them, and, if so, that he would be fined in the presence of the jury. From the testimony and the remarks of counsel which preceded the statement which plaintiff assails it is apparent that the court was impartially reprimanding counsel representing the plaintiff and the defendant baking company alike. The admonition must have produced the desired restraining effect as no order of contempt was entered. The record discloses, further, that an attempt was made to place the widow of the deceased on the stand as a rebuttal witness. She did not see the accident and it appears that subsequently she became blind. Upon the request of an attorney for the baking company a conference took place out of the presence and hearing of the jury, at which an objection to placing Mrs. Taylor on the stand was interposed. Plaintiff's counsel stated that he desired to ask her to describe the efforts she had made to obtain witnesses. The court then allowed Mrs. Taylor to testify from her chair behind one of plaintiff's attorneys. Interrogated only as to whether she was in physical condition to visit the neighbors to make inquiries about the accident, she replied in the negative, adding that she had an attorney who was present at the inquest. The foregoing complaints, and others which do not require recounting, fail to show prejudicial error in the slightest degree.

This opinion will not be extended by detailed discussion of the contentions that errors were made in the admission and exclusion of evidence, and, further, that the attorneys for the defendants made damaging remarks in the presence

of the jury. These contentions have been considered, and we deem it sufficient to observe that our examination of the record fails to substantiate either charge.

The contention that the verdict of not guilty as to the defendants, Tyller and the Ward Baking Company, resulted from confusion on the part of the jury is without merit. During its deliberations the jury requested an instruction as to why the company and Tyller were included on one sheet as defendants and the city of Berwyn and Bartunek on separate sheets. The form of the court's answer to the interrogatory was submitted to and approved by the attorneys representing each of the parties. So far as material here, the interrogatory was properly answered by instructing the jury that the same verdict would have to be rendered with respect to the baking company and its employee.

Finally, plaintiff insists that the verdict finding these two defendants not guilty is against the manifest weight of the evidence. The question of their negligence was a controverted question of fact to be determined by the jury from the conflicting testimony of the witnesses who testified in behalf of the respective parties. By its verdict the jury found that Taylor's death was not caused by the negligence of these defendants, the trial judge approved the verdict as to them, and the Appellate Court has thoroughly reviewed the testimony and decided that it should not be disturbed. There is, hence, no question as to negligence before us for decision. *Crane* v. *Railway Express Agency, Inc.* 369 Ill. 110.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*