(No. 18237.—

ToM G. ROUMBOS, Admr., Defendant in Error, *vs.* THE
CITY OF CHICAGO, Plaintiff in Error.

*Opinion filed October 25, 1928.*

SAMUEL A. ETTELSON, Corporation Counsel, WILLIAM D. SALTIEL, City Attorney, FRANCIS X. BUSCH, and JOHN J. KELLY, (CORA B. HIRTZEL and DANIEL V. GALLERY, of counsel,) for plaintiff in error.

CHARLES C. SPENCER, ARTHUR A. HOUSE, ALBERT SCHAFFNER, and EMMANUEL G. COLIOPOULOS, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of *certiorari* granted on the petition of the city of Chicago brings before us for review the record of a judgment of the Appellate Court for the First District affirming a judgment of the circuit court of Cook county against the city for negligently causing the death of Marie Roumbos, and the question presented is whether the city is liable for damages caused by the negligence of an employee of the street-cleaning department of the city in performing his duty.

Marie Roumbos, a little girl four years old, was living with her parents on the second floor of a building which stood on the north side of Hope street, flush with the sidewalk. She was sitting at the edge of the sidewalk, on the lower step of the stairway leading from the second floor to the street. A street sweeper in the employ of the city swept a pile of trash, shown to be about one or two feet high and three feet in circumference, to the curb, about five or six feet from the house, set fire to it and went away. The wind blew the flame across the sidewalk. It caught the child's dress and she was so badly burned that she died the same day. The city introduced no evidence but at the close of the plaintiff's evidence moved for an instructed verdict in its favor. The motion being denied, the cause was submitted on the evidence for the plaintiff and a verdict for $5000 was returned, upon which judgment was rendered.

The first count of the four in the declaration was based on an ordinance which the court did not admit in evidence and therefore need not be considered. The fourth count alleged that the fire was attractive to children and the child was attracted by it and unavoidably came in contact with it. This count is not sustained by the evidence. The second and third counts allege the wrongful and negligent starting of the fire in the street and negligently leaving it unguarded. The plaintiff in error argues that these counts do not state a cause of action because they do not state facts showing that the servants of the city, in doing the acts complained of, acted within the scope of their authority or that such acts were not in the performance of a governmental function. The defendant having filed a plea of the general issue after its general demurrer to the declaration was overruled, thereby admitted the sufficiency of the declaration and waived its right to assign error on the overruling of the demurrer, but the objection that the declaration was not sufficient to sustain the judgment was still

open to it. In the consideration of the question in this court, however, the rule which prevails on the consideration of a demurrer that the pleading is to be taken most strongly against the pleader is reversed and the pleading upon which the judgment is based will be liberally construed to sustain the judgment.

The third count stated that the defendant, by its agents and servants acting within the scope of their employment, kindled a fire of large quantities of rubbish, paper and other combustible material in the street, and it is said that the allegation that the servants were acting within the scope of their authority states nothing but a conclusion. Assuming, but not deciding, this statement to be correct, it was still an ultimate conclusion of fact, to be shown by the evidence, whether the act was within the scope of the employment of the servants or not. Even if the fact be regarded as defectively or improperly stated, the question was presented and the defendant accepted the issue offered by filing the general issue, which required proof of the fact thus defectively or imperfectly stated, without which it is not to be presumed that the judge would have directed or the jury given a verdict for the plaintiff. In such case the defect in the declaration is aided by the verdict. It is further insisted that if the count is not bad for this reason it is still defective for want of an allegation that the servants in kindling the fire were not performing a governmental function. The allegation is that the servants, while acting within the scope of their employment, kindled the fire of divers large quantities of rubbish, paper and other combustible material in the street, and after verdict this implies that in the course of their employment they were gathering and disposing of the material in the process of cleaning the street. This presents the real question in the case—whether the city is liable for the negligence of its employees engaged in cleaning the streets.

There was evidence tending to show that the fire was started by a street sweeper employed by the plaintiff in error in cleaning the street, who in the course of his employment collected his sweepings together in a pile and set fire to them, causing the death of the defendant in error's intestate, and the judgment of the trial court entered on the verdict of the jury and affirmed by the Appellate Court is therefore binding upon the plaintiff in error as to the facts. If the plaintiff in error were a private corporation it would clearly be liable for the injury under the doctrine of *respondeat superior*. There is a material distinction, however, in the applicability of this doctrine in the case of municipal corporations, which are not, in general, liable to a private action for damages caused by the negligence of their agents or servants in the performance of the governmental powers of such corporations unless such action is specially authorized by statute, while they are liable for injuries negligently caused by their employees while engaged in duties of a private or local nature not involving the exercise of governmental power. The division of municipal functions into public and governmental on the one hand and private and corporate on the other is not well defined but is vague and indefinite. No definition of the terms has been declared which is of much practical value or "which will precisely embrace torts for which a civil action will lie, in the absence of a statute declaring the liability against a municipal corporation." (4 Dillon on Mun. Corp.—5th ed.—sec. 1625.) It has been said that all that can be done with safety is to determine each case as it arises. (*Lloyd* v. *New York*, 5 N. Y. 369; *Cobb* v. *Dalton*, 53 Ga. 426.) To determine whether there is municipal responsibility the inquiry must be whether the particular agents or servants for whose acts of negligence it is sought to hold the corporation are its agents and servants for the performance of a public duty imposed by law, or merely for the carrying out of private functions which are for its

special benefit or advantage. (*Johnston* v. *City of Chicago*, 258 Ill. 494.) "The whole doctrine of the liability of public corporations for the torts of their officers or agents is affected and modified by the principle that the tortious act or omission must be in violation not of a public but of a private duty. The reason and the essence of this rule is clear and easily to be understood, but its application to the specific cases is often of great difficulty. The rule is laid down in a recent Texas case, (*City of Galveston* v. *Posnainsky*, 62 Tex. 118,) which is approved by the editors of the American and English Encyclopedia of Law: 'So far as public corporations of any class and however incorporated exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the State— they should be deemed agencies of the State and not subject to be sued for any act or omission occurring while in the exercise of such power unless by statute the action be given. In reference to such matters they should stand as does sovereignty, whose agents they are, subject to be sued only when the State by statute declares they may be. In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants— there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for purposes essentially private would be liable.' " (1 Beach on Public Corp. sec. 261.)

The principle upon which municipal corporations, such as villages, towns and cities, incorporated by special charters or voluntarily organized under general laws, are held liable to individuals injured by the negligent acts of their agents and servants in respect to corporate duties, while public involuntary *quasi* corporations, such as counties, townships, school districts and road districts, are not liable to respond

in damages in a civil action for negligence in the perform-
ance of public duties unless such action is given by the stat-
ute, was considered in *Elmore* v. *Drainage Comrs.* 135 Ill.
269, where it was said: "That a private corporation formed
by voluntary agreement, for private purposes, is held to
respond in a civil action for its negligence or tort goes
without saying, and yet, in deciding the mooted question
at issue in this case, it seems convenient to re-state that
proposition. So, also, it is admitted law that municipal
corporations proper, such as villages, towns and cities,
which are incorporated by special charters or voluntarily
organized under general laws, are liable to individuals in-
jured by their negligent or tortious conduct, or that of their
agents and servants, in respect to corporate duties. In re-
gard to public involuntary *quasi* corporations the rule is
otherwise and there is no such implied liability imposed
upon them. These latter,—such as counties, townships,
school districts, road districts and other similar *quasi* cor-
porations,—exist under general laws of the State, which
apportion its territory into local subdivisions for the pur-
poses of civil and governmental administration, and impose
upon the people residing in said several subdivisions pre-
cise and limited public duties and clothe them with restricted
corporate functions co-extensive with the duties devolved
upon them. In such organizations the duties, and their
correlative powers, are assumed *in invitum,* and there is
no responsibility to respond in damages, in a civil action,
for neglect in the performance of duties unless such action
is given by statute. [Citing authorities.] The grounds
upon which the liability of the municipal corporation proper
is usually placed are, that the duty is voluntarily assumed
and is clear, specific and complete, and that the powers
and means furnished for its proper performance are ample
and adequate. (*Browning* v. *City of Springfield,* 17 Ill.
143.) In such case there is a perfect obligation, and a
consequent civil liability for neglect in all cases of special

private damage. The non-liability of the public *quasi* corporation, unless liability is expressly declared, is usually placed upon these grounds: that the corporators are made such *nolens volens,* that their powers are limited and specific, and that no corporate funds are provided which can, without express provision of law, be appropriated to private indemnification. Consequently, in such case the liability is one of imperfect obligation, and no civil action lies at the suit of an individual for non-performance of the duty imposed." The general result is stated by Beach as follows (sec. 263) : "If the tort is one for which the municipality is expressly made liable by statute, that fact, of course, concludes the liability of the corporation. If such is not the case then the tort must consist (in the case of public corporations other than public *quasi* corporations) of the violation of a private duty imposed for private corporate advantage, and not of a public or governmental duty imposed for the benefit of the public at large. In the case of public *quasi* corporations the general rule is that they are liable only for those torts for which the statute expressly prescribes that they shall be liable." The private or corporate capacity which subjects the city to liability, as contrasted with the public or governmental capacity which relieves it from liability, does not refer to a pecuniary advantage to the municipality or its inhabitants but to the nature of the act or transaction in question, whether affecting primarily the interest of the locality or inhabitants of the city or the general public.

Cities become incorporated by the voluntary act of their inhabitants, for the benefit of the territory incorporated and the people residing within the corporation. By their incorporation they receive certain powers and privileges and assume certain duties and obligations. So far as they are exercising these privileges and duties in the interest of the general public (the people of the State at large) they represent the sovereignty of the State and are not liable for the

negligence of their officers and agents in the performance
of such duties, but so far as their acts concern merely the
interest of the particular locality and its inhabitants they
are responsible, the same as private corporations. The leg-
islature has the power, within constitutional limitations, to
determine to what extent the city shall be liable for injuries
negligently committed by its officers and agents in the ex-
ercise of its powers. "The rule of law is a general one
that the superior or employer must himself respond civilly
for the negligence or want of skill of his agent or servant
in the course or line of his employment by which another
who is free from contributory fault is injured." (2 Dillon
on Mun. Corp. sec. 968.) The application of this rule to
municipal corporations in cases of torts by their employees
and servants tends more to the securing of justice than the
release of the corporations from the results which follow
for private corporations or individuals.

It has always been the doctrine of this court that while
the legal obligation of a city to construct gutters and sewers
is one which is voluntarily assumed, yet having assumed
the obligation and constructed these improvements for the
benefit of the public it then becomes the duty of the city
to see that they are kept in repair. (*City of Chicago* v.
*Seben,* 165 Ill. 371; *City of Alton* v. *Hope,* 68 id. 167;
*City of Chicago* v. *Gallagher,* 44 id. 295; *City of Lacon*
v. *Page,* 48 id. 499.) Section 1 of article 5 of the Cities
and Villages act confers power over the streets and other
public places upon the city council, as follows:

"Seventh. To lay out, to establish, open, alter, widen,
extend, grade, pave or otherwise improve streets, alleys,
avenues, sidewalks, wharves, parks and public grounds, and
vacate the same. * * *

"Eighth. To plant trees upon the same.

"Ninth. To regulate the use of the same.

"Tenth. To prevent and remove encroachments or ob-
structions upon the same.

"Eleventh. To provide for the lighting of the same.

"Twelfth. To provide for the cleansing of the same.

"Thirteenth. To regulate the openings therein for the laying of gas or water mains and pipes, and the building and repairing of sewers, tunnels and drains, and erecting gas lights."

Under these clauses of the statute we have held the city liable for negligence in the construction of a sewer, (*City of Chicago* v. *Seben, supra;*) in the construction of a city hall, (*City of Chicago* v. *Dermody,* 61 Ill. 431;) for a bridge tender's negligence in setting the machinery of the bridge in motion whereby the plaintiff was caught in the machinery and injured, (*Gathman* v. *City of Chicago,* 236 Ill. 9;) in the maintenance of electric wires used in lighting the streets, (*Stedwell* v. *City of Chicago,* 297 Ill. 486;) in lighting a street; (*City of Freeport* v. *Isbell,* 83 Ill. 440;) in removing an awning which constituted an obstruction in the street. (*Hanrahan* v. *City of Chicago,* 289 Ill. 400.) In *Johnston* v. *City of Chicago, supra,* the city was held liable for the negligence of the driver of an automobile used in the delivery of books from the Chicago Public Library to sub-stations in the city, resulting in damage to the plaintiff's automobile.

The clauses which have been quoted from section 1 of article 5 of the Cities and Villages act all refer in the same way to the same subject—the care and maintenance of the streets. If in laying out, establishing, opening, altering, widening, extending, grading, paving or otherwise improving the street the city was in the exercise not of governmental functions but of a corporate or private function and was liable for an injury occasioned by its negligence, and if in removing an obstruction from the street it was liable, and if in the construction of sewers it was liable, and if in placing and maintaining electric wires for lighting the street it was liable for the negligence of its employees, no reason is apparent why it was not liable to a person

injured by their negligence in planting trees upon the street, or stringing electric wires for lighting the street, or cleansing the street, under powers granted for the same purpose and in the same language.

A city in the use of the police powers conferred upon it by the legislature does not act in its private capacity or in the local interest but in the exercise of a governmental function—a part of the political and governmental authority of the State and in the general public interest—and it is therefore not liable for the acts of its officers in the enforcement of police regulations. So it has been held that an incorporated town is not liable for the imprisonment of a person by one of its officers upon a verbal order of a police magistrate for a violation of an ordinance, (*Town of Odell* v. *Schroeder,* 58 Ill. 353;) that a city is not liable for the negligent shooting of a person by a police officer in attempting to enforce an ordinance forbidding the running at large of dogs without being muzzled and providing that all dogs running at large in violation of the ordinance should be destroyed, (*Culver* v. *City of Streator,* 130 Ill. 238;) or for a brutal and unjustifiable assault made by a police officer under pretense of discharging his duty to prevent the obstruction of the streets. *Craig* v. *City of Charleston,* 180 Ill. 154.

The fire department maintained by a municipal corporation is also regarded as belonging to the public or governmental branch of the municipality so as to relieve the municipality of liability for injuries to person or property resulting from the negligence of officers or employees connected with the maintenance and operation of the department. (*Wilcox* v. *City of Chicago,* 107 Ill. 334.) In Dillon on Municipal Corporations (1st ed. sec. 774,) it is said: "The exemption from liability is placed upon the ground that the service is performed by the corporation in obedience to an act of the legislature—is one in which the corporation has no particular interest and from which it

derives no special benefit in its corporate capacity; that the members of the fire department, although appointed by the city corporation, are not the agents and servants of the city for whose conduct it is liable, but they act rather as officers of the city charged with a public service, for whose negligence in the discharge of official duty no action lies against the city without being expressly given, and the maxim *respondeat superior* has, therefore, no application." In the case above cited it is said: "In favor of the doctrine, it may be that an additional, if not more satisfactory, reason for its adoption and rendering it an exception to the general rule may be found in public policy. If liable for neglect in this case the city must be held liable for every neglect of that department, and every employee connected with it when acting within the line of duty. It would subject the city to the opinions of witnesses and jurors whether sufficient dispatch was used in reaching the fire after the alarm was given; whether the employees had used the requisite skill for its extinguishment; whether a sufficient force had been provided to secure safety; whether the city had provided proper engines and other appliances to answer the demands of the hazards of fire in the city; and many other things might be named that would form the subject of legal controversy. To permit recoveries to be had for all such and other acts would virtually render the city an insurer of every person's property within the limits of its jurisdiction. It would assuredly become too burthensome to be borne by the people of any large city, where loss by fire is annually counted by the hundreds of thousands, if not by the millions. When the excitement is over and calm reason assumes its sway it may appear to many where other methods could have been adopted to stay destruction that appear plausible as theories and their utter fallacy cannot be demonstrated by any actual test. To allow recoveries for the negligence of the fire department would almost certainly subject property holders to as great, if not greater,

burthens than are suffered from the damages from fire. Sound public policy would forbid it, if it was not prohibited by authority."

Police regulations include ordinances passed for the purpose of securing the safety, health, welfare and good order of the public, and persons charged officially with the execution and enforcement of such orders are engaged in the performance of a public duty, and the city, under whose authority they act, is not liable for injuries negligently caused by them in the performance of such duties. The erection and maintenance by a city on its property of a small-pox hospital gives no right of action to a person owning other property in the vicinity for damages to its value. (*Frazer* v. *City of Chicago,* 186 Ill. 480.) A city may maintain a hospital in the exercise of the police power and is not liable for the negligence of its employees connected with the hospital. (*Tollefson* v. *City of Ottawa,* 228 Ill. 134.) It is a proper exercise of the police power for a city to erect and maintain a calaboose, and it is not liable for the wrongful acts or negligence of its officers and employees in the management of the calaboose or the detention therein of a person having small-pox, whereby persons living or working near the calaboose contracted the disease. *Evans* v. *City of Kankakee,* 231 Ill. 223.

It is argued that the city was acting under the police power for the preservation of the public health by causing the streets to be cleaned. The language of the Court of Appeals of New York in an action brought against the city of New York to recover damages for the death of a child run over and killed by an ash-cart of the cleaning department of the city is a fitting answer to this argument: "The fact that the discharge of this duty might incidentally benefit the public health did not make the acts of the commissioner of street-cleaning a public function. It is clear upon principle and authority that the city of New York in the ordinary and usual care of its streets, both as to repairs

and cleanliness, is acting in the discharge of a special power granted to it by the legislature, in the exercise of which it is a legal individual, as distinguished from its governmental functions, when it acts as a sovereign." (*Missano* v. *City of New York,* 160 N. Y. 123.) The United States circuit court of appeals for the eighth circuit, in answer to the same argument, said: "In almost all affairs of purely local concern some indirect relation may be traced to a matter of health, safety, or other subject of governmental cognizance. The test is not that of casual or incidental connection. If the duty in question is substantially one of a local or corporate nature the city cannot escape responsibility for its careful performance because it may in some general way also relate to a function of government. Thus, from very early times the maintenance of highways has been of general interest. Nevertheless the overwhelming weight of authority is to the effect that the superintendence and care of the streets and alleys of a city, and all that directly pertains thereto, are peculiarly in the class of municipal duties for the neglect of which the city, in its corporate character, is liable." (*City of Denver* v. *Porter,* 126 Fed. 288.) In *Ostrow* v. *City of San Antonio,* 94 Tex. 523, the court said: "The law imposed the duty of cleaning the streets upon the city of San Antonio within its own limits primarily and especially for the benefit of its own people. It is strictly a corporate function, for the abuse of which by its agents in the course of their regular employment the city must be held liable." So it was held also in *City of Denver* v. *Davis,* 37 Col. 370, *Pass Christian* v. *Fernandez,* 100 Miss. 76, and *City of Louisville* v. *Haus,* 167 Ky. 160. In this State the care of the streets and sidewalks, their lighting and maintenance, have always been held to be the corporate functions of the municipality, and the municipality has been held liable for the negligence of its employees in the performance of those functions which has resulted in injury to others. There is no difference in kind between

these functions and the cleaning of the streets. All are provided for by the same statute in the same terms, and the same rule of liability should apply to all.

It is argued that the great weight of authority in the decisions of the courts of final jurisdiction in other States is contrary to the conclusion we have reached. We have not overlooked or failed to consider those decisions. Those denying the liability of the city are more numerous than those to the contrary, but in our judgment the view which we have expressed is sustained not only by our own decisions but by the better reason and is more just in its operation than the other view.

Some objections were made to instructions. They were based on the plaintiff in error's theory of the case that it was not liable under the law, and it is unnecessary to discuss them.

The judgment is affirmed.     *Judgment affirmed.*