Walter E. Petersen, Appellee, v. City of Gibson, Appellant.

Gen. No. 9,398.

Heard in this court at the October term, 1943. Opinion filed February 29, 1944. Rehearing denied April 22, 1944.

MIDDLETON & MIDDLETON, of Gibson City, for appellant.

LINDLEY, PACEY & PACEY, of Gibson City, for appellee.

MR. PRESIDING JUSTICE DADY delivered the opinion of the court.

Plaintiff brought suit against the defendant city to recover the value of personal property destroyed on July 2, 1941, by a fire alleged to have been caused by the negligence of the defendant. A trial before a jury resulted in a verdict and judgment for plaintiff for $2,500. Defendant appeals from such judgment.

The complaint as finally amended contained three counts. Count one charged that at all times in question plaintiff was in the exercise of due care for the safety of his personal property; that on July 2, 1941, he was in possession of a building located on the east portion of Block 4 in a certain subdivision in the City of Gibson, in which he had stored certain farm equipment; that on June 30, 1941, a very heavy wind struck the defendant city and as a result thereof a great many trees were blown down and obstructed the free flow of traffic over the defendant's streets; that the defendant

voluntarily assumed the removal of broken limbs and other inflammable material from its streets; that in so doing such limbs and broken trees were hauled by employees of defendant to the east portion of said Block 4 "just north" of such frame building and were there burned; that the defendant negligently, carelessly and wrongfully set fire to such material and negligently, carelessly and wrongfully failed to watch and control said fire, and that as a result thereof the property in the building was burned and destroyed.

Counts two and three varied from count one only by charging that the fire occurred from a deposit of such brush upon live embers and burning material and that defendant negligently failed to watch and control the fire which resulted therefrom.

Defendant filed its motion to strike the complaint as amended and each count thereof on the ground that such complaint failed to state a cause of action, which motion the trial court denied. The defendant urges that this was error.

The gist of defendant's motion was that the essential averments in the complaint were too general and indefinite on which to base a charge of negligence.

The first question presented is whether the complaint as amended is sufficient to sustain the judgment. In the consideration of such question, where an answer has been filed after the denial of a motion to strike, the complaint will be liberally construed to sustain the judgment. (*Roumbos v. City of Chicago,* 332 Ill. 70.)

The inquiry at this time is not whether the complaint complied with the technical rules of pleading, but whether by reasonably intelligible allegations, it advised the defendant of the case to be made against it. (*Miller v. S. S. Kresge Co.,* 306 Ill. 104.) It is our opinion that the allegations of the complaint were sufficiently definite to inform the defendant that the plaintiff's claim was based on the act of the defendant's employees in negligently burning brush in close proximity

to the plaintiff's property and negligently failing to watch or control such fire. Whether the city, in fact, owed any legal duty to the plaintiff in the act of burning such brush was a legal question to be determined by the court, and it was not necessary for the pleader specifically to allege that in the commission of such acts the city was engaged in a private corporate function, as contrasted to a governmental function. *(Roumbos v. City of Chicago, supra.)* Whatever its defects may have been we think this complaint contained sufficient facts to state a cause of action against the defendant. A complaint meeting this requirement is sufficient to withstand a motion to dismiss followed by an answer after a verdict and judgment have been rendered. *(Miller v. S. S. Kresge Co., supra.)*

After the amended complaint was filed, the court denied defendant's motion that plaintiff be required to file a bill of particulars. In such motion defendant sought to secure such information as, (1) the specific location of plaintiff's property on Block 4; (2) the particular description of each article of plaintiff's property as enumerated in the complaint as to age, contents, material, value, model and serial numbers; (3) the means by which the fire was communicated to the frame building where plaintiff had his personal property stored.

The amended complaint described each item of personal property which the plaintiff claimed to have lost in sufficient detail to advise the defendant as to the nature and type of article included in plaintiff's claim, and charged that the defendant burned inflammable material just north of the plaintiff's building. While the term "just north" is not definite, it sufficiently charged that the building and the fire were in close proximity to one another. We do not consider that it was necessary for the plaintiff to allege specifically the exact location of the building or the particular means by which the fire was communicated from the brush

pile to the building. It is common knowledge that a fire can be communicated either by means of direct contact with flame or through sparks generated from flame, and we believe it would be imposing an unreasonable burden on the plaintiff to require him to point out the particular means by which the fire was transferred.

In our opinion there was no occasion for a bill of particulars and the trial court in the exercise of its discretion properly refused to require a bill of particulars.

There was practically no conflict in the evidence introduced at the trial except on the question of the amount of the plaintiff's damages. It appeared from this evidence that the building in question was a frame shed approximately 24x44 feet in size, located at the southeast corner of the block. At the time of the fire the building was locked and no one had been on the premises between 5 a. m. and the time of the fire, which occurred at approximately 3 p. m. There was no stove or other means of heat within the building.

Defendant's employees hauled truck loads of brush to this block on July 1, and this brush was there burned in a brush pile, the south edge of which was about 30 feet from the north end of the building. The hauling of this brush continued on July 2, and there was some question whether the fire in question started on that date or whether there were sufficient live embers from the previous day's fire to ignite the brush. A truck load was dumped onto the brush pile about 3 p. m. of July 2 by two of defendant's employees. One of these employees, who was also street commissioner, testified that he "imagined" that the brush pile was around 30 feet from the north end of plaintiff's building and that the fire blazed 8 to 10 feet high. He further testified, "we did not leave anyone to watch the fire that day and I do not know of anyone there watching it." Another witness testified that the height of the flame was from

10 to 15 feet high. The wind on this day was blowing from the northeast and the smoke was so dense in the vicinity of the fire that it was difficult to drive along the street. The truck which dumped the load at 3 o'clock returned in about 15 minutes with another load, and at that time it was discovered that the building was on fire.

There was evidence to the effect that the defendant had used this property for burning brush for some years prior to the fire, and that during that time plaintiff was a member of the city council and of the street and alley committee. There was no evidence, however, that the plaintiff ever authorized any of the city employees to burn brush in this particular location, and one of the defendant's witnesses who was a former street superintendent testified that he was careful not to burn brush on the lot when the wind was towards the frame building where plaintiff's property was stored, and that if the wind changed he ceased burning if the fire was of any size.

We have reviewed all of the evidence and we think that it was clearly sufficient to justify the jury in finding that the defendant was negligent and in assessing the plaintiff's damages at the sum of $2,500.

The question remains whether the defendant can be held liable for the negligence of its employees in burning debris collected from its streets in the manner disclosed by the record.

It is defendant's contention that in disposing of the brush which had fallen onto its streets it was acting in a political or governmental capacity and therefore cannot be held liable for the negligence of its employees. Defendant recognizes that if the acts were committed while it was engaged in a corporate or proprietary function that the doctrine of *respondeat superior* would be applicable as in the ordinary case of negligence committed by the employees of a private corporation.

In *Bedtke v. City of Chicago,* 240 Ill. App. 493, plaintiff sued the city of Chicago for negligence in the use of a portable incinerator in an alley back of plaintiff's premises which caused the destruction by fire of certain personal property belonging to the plaintiff. The court there held in affirming a judgment for plaintiff, that in cleaning its streets and alleys the city was performing a corporate and ministerial and not a governmental function.

In *Roumbos v. City of Chicago,* 332 Ill. 70, a trial court judgment was affirmed in which the city of Chicago was held liable for the act of a street sweeper in leaving unattended a small burning pile of trash next to a curb, the flame from which was communicated to the dress of a four year old girl thereby causing fatal burns.

Defendant admits that "ordinarily cleaning of city streets and burning brush is a ministerial function as distinguished from a governmental function, and that this is true where the cleaning and burning is done for a local city purpose." Defendant then goes on to argue that the general rule does not apply to this case because plaintiff admitted in his pleadings that the cleaning of the streets and the hauling of brush was for "the general public good." In its answer to the complaint, defendant alleged that the city in collecting and removing the debris was "acting under a power conferred upon it by law and the said acts were for the public good and appertained to the defendant corporation in its political capacity." In the reply to this answer plaintiff admitted that the defendant was acting under a power conferred upon it by law, and that the said acts were "for the public good," but denied "that said acts appertained to the defendant corporation in its political capacity" and averred that the defendant in performing said duties was in the exercise of the municipality's private corporate or ministerial

functions, as contra-distinguished from its governmental functions or police power.

Plaintiff in his reply did not admit that the acts in question were for the "general public good." The public derives some benefit from almost every act performed by city employees in the conduct of the business of the city, but this incidental benefit is not sufficient to make the act a governmental function. (*Johnston v. City of Chicago,* 258 Ill. 494.) Plaintiff's reply even with its admissions, clearly raised the issue that the defendant's acts were corporate and not governmental.

Defendant makes the further contention that, because a portion of the debris was collected from a State bond highway running through the city, the city represented the sovereignty of the State and was therefore exercising a governmental function. The evidence showed that the debris was collected generally from the streets within the city which collection would primarily benefit the residents of the city. The fact that the general public as users of the State highway might also derive some benefit from the cleaning of this one street, is not sufficient in our opinion to change the entire character of the transaction.

Defendant complains of the giving and refusal of certain instructions. Defendant has not set forth the language or substance of any of such instructions in its brief. In this situation we will not search the record to find whether any error has been committed in the giving or refusal of instructions. (See *Hirshman v. National Mineral Co.,* 311 Ill. App. 169; *Jones v. Keilbach,* 309 Ill. App. 233.) Other errors have been assigned but we find none of them deserving of comment.

It is our opinion that the trial court properly denied defendant's motions for a directed verdict and for judgment notwithstanding the verdict, and that the judgment of such court should be affirmed.

*Affirmed.*