Charles Prickett, Administrator of Estate of Dale B. Prickett, Deceased, Appellant, v. City of Hillsboro, Appellee.

Gen. No. 9,430.

236

Opinion filed May 24, 1944.

J. D. WILSON, of Nokomis, and ROLLA BABCOOK, of Centralia, for appellant.

ELBERT W. BUTLER and LESTER K. VANDEVER, both of Hillsboro, for appellee.

MR. JUSTICE RIESS delivered the opinion of the court.

On December 16, 1942, plaintiff appellant Charles Prickett, administrator of the estate of Dale B. Prickett, deceased, filed a suit at law in the circuit court of Montgomery county against the defendant appellee, City of Hillsboro and one John Olroyd, since deceased, seeking recovery of damages alleged to have been sustained by the next of kin of said Prickett under the provisions of the Illinois Injuries Act (ch. 70, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 38.01 *et seq.*]) as a proximate result of the wrongful conduct of the defendants. Defendant appellee filed motions to strike the amended complaint, consisting of seven counts and two additional counts numbered ten and eleven, which motions were allowed by the court. The plaintiff elected to stand by the complaint as amended and judgment was entered in favor of the City of Hillsboro and against the plaintiff administrator in bar of suit and for costs, from which judgment the plaintiff has appealed to this court.

The first count of the amended complaint charged in substance that in 1918, the defendant, a municipal corporation, had purchased and owned a 263 acre tract

of land located approximately two miles from the City of Hillsboro and had constructed and maintained thereon a dam and reservoir lake for a water supply and as a public park for the use and benefit of the inhabitants of the city, under and pursuant to the provisions of two enabling statutes concerning water-works and public parks which acts are cited in the complaint; that the water was used by the city for fire protection and was sold to its inhabitants; that small tracts of ground bordering on the reservoir lake were leased as cottage sites; that the city built a brick and concrete pavilion of 40 by 60 feet in dimensions on the bank of the lake, part of which pavilion was used for dancing, roller skating and other recreational activities, including therein a section leased as a concession or vending stand to one John Olroyd for the sale of soft drinks, ice cream, soda, popcorn and similar refreshments, from which sources and concession rentals some revenue was derived by the city; that a road leading from defendant city to said lake and pavilion was marked by pointer signs directing patrons, as invitees to whom the city owed the duty of due care in granting concessions at the pavilion and in seeing that concessionaires or persons in charge of the pavilion were trustworthy and would not wantonly and without cause assault, injure or kill invitees lawfully at said premises; that the defendant city so leased said concession to Olroyd and placed him in possession or charge thereof and had renewed said lease on May 29, 1942 for a period of one year for a rental of $200 with knowledge that Olroyd was of drunken habits and unbalanced mental condition, and that his conduct and mental disturbances and delusions, coupled with threats to assault, injure or kill persons and invitees without cause at times during a previous period of six months, was known or by exercising due care should have been known to the defendant city; that about 7:30 o'clock on the morning of July 5, 1942, said Olroyd, while

drunk and in an unbalanced state of mind, had reported to police of defendant city the alleged presence of men in the trees around the pavilion whom he would shoot and kill and asked that some officer be sent to the premises, when in fact no persons were in any such trees; that at 8:00 a. m., a city policeman came and found Olroyd with a loaded gun in his possession; that Olroyd was permitted to remain as concessionaire under said lease when the city knew or by due care would have known of his dangerous condition; that later at about 10:30 o'clock a. m., plaintiff's intestate, a farmer boy aged 17 years, while swimming and on a float some distance out in said lake from the pavilion, was fatally shot by said Olroyd while in a drunken and insane condition, and died on the same day, resulting in damages to the next of kin, for the recovery of which suit was filed.

Count two contained substantially the same allegations and recited that the land was used for park purposes "for the use and benefit of the inhabitants of the City of Hillsboro." The third count substantially realleges the allegations of the first count. Count four also realleges conditions recited in previous counts and charged that the city created and maintained a dangerous nuisance at the pavilion and premises on its land by keeping and retaining said Olroyd in his alleged condition and in inviting persons into a place of danger known to the city. Count five realleged the maintenance of the land and premises referred to outside of the corporate limits of said city for the use and benefit of its inhabitants under certain cited statutory provisions concerning Water Works and Public Park Acts for cities having a population of less than 15,000. Counts six and seven contain allegations similar in substance to those of the previous negligence counts. No counts numbered eight and nine appear in the amended complaint. Count ten recites in substance the ownership of the above tract of land

and that the city maintained a park and constructed an artificial lake and swimming pool on the banks thereof; that a certain pavilion and beach or bathhouse was used in connection with the park by patrons and invitees who paid for said privileges and was so constructed for the use and benefit of the inhabitants of the city and vicinity. Then follow recitals similar in substance to those set forth in the preceding counts and allegations that by reason of the mental condition and dangerous propensities of said Olroyd "the said city then and there maintained a dangerous nuisance there at said park and swimming pool, in the maintaining and keeping the said John Olroyd there and permitting him . . . to be and remain there, as aforesaid," and violated its duty to protect plaintiff's intestate at said swimming pool, resulting in his injury and death and plaintiff's damages as hereinabove recited. Plaintiff concluded in the alternative "That by reason of the premises the defendant, City of Hillsboro, became liable for the injuries complained of whether acting in its private capacity or governmental capacity."

Count eleven, in addition to certain recitals of the previous counts, alleged that since said swimming pool has existed, the governing board thereof was required by statute to "provide proper protection to the public in the use of said swimming pool," but citing no statute so providing; that the city may charge and collect reasonable fees for such use; that the city did not remove said John Olroyd and did not protect plaintiff's intestate in the use of said swimming pool, which proximately resulted in his death and the resultant damages to his next of kin, as hereinabove set forth.

The defendant city interposed its motions to strike each and all of said counts and to dismiss the suit, which motions set forth in substance that it appeared from the face of the complaint as amended that the

alleged injuries are shown to have occurred while plaintiff's intestate was patronizing the municipal swimming pool which was maintained and operated by defendant city in its governmental capacity under legislative sanction and that the tortious injury by Olroyd, if any, as alleged in all counts, are shown by the factual recitals to have arisen out of an enterprise operated by the defendant city in its governmental capacity for which the city was not liable to respond in civil damages; that it appears from said counts that at the time of committing the wrongful act complained of, Olroyd was not acting within the actual or apparent scope of the provisions of any lease or agreement by and between himself and the defendant municipality, either as its officer, agent, employee or otherwise: that it clearly appears from factual recitals that defendant had no right or authority to conduct and did not conduct the pavilion or lake "for swimming purposes" as a private enterprise for profit and that the operation of said pavilion, lake and park for profit as a private enterprise, if so operated, would have been ultra vires; that the complaint seeks to hold defendant liable as an insurer against injuries occurring to patrons of the lake; that it appears from the recitals therein that the death of plaintiff's intestate had no causal connection with the operation or maintenance of the lake or swimming facilities, or any act of an agent, employee, concessionaire or person having any authority or supervision over the lake or the swimming pool or patrons thereof.

Concerning additional counts ten and eleven, the motion substantially restates the above objections and also sets forth that there was no common law requirement for the city to provide police or physical protection to the public in connection with the use of the municipal lake as a swimming pool and that such allegation is improper; that no specific statutory provision is cited showing any alleged statutory duty of

the city to furnish or insure personal police protection to patrons of the swimming pool, as required by rule 13 of the Supreme Court; that the city is not an insurer against injuries occurring to patrons at the swimming pool and that the complaint shows on its face that the occurrence complained of and resultant damages, if any, were not due to any failure to provide reasonably safe physical equipment or protection to patrons in the use of the swimming pool, nor does it show on its face that the late defendant Olroyd, in shooting the plaintiff's intestate, was acting in the exercise of any ministerial authority or apparent authority or capacity as agent, employee, concessionaire or otherwise on behalf of the defendant; that no facts are alleged showing or justifying the conclusion that the city maintained a nuisance on said premises.

Errors are assigned by the defendant in granting motions to strike and dismiss the amended complaint and additional counts, in that the reference to certain allegations of other counts in the discussion of each amended or additional count constitutes a speaking demurrer and that defendant's motions should have been overruled; in holding from the factual recitals of the complaint that the city was performing governmental functions and was therefore not liable to respond in damages for the torts of its officers, servants or agents; in not holding under the facts alleged that a dangerous nuisance was created and maintained on the city's property endangering invitees by permitting the presence of Olroyd thereon; in not holding that the city in the management and leasing of the pavilion on its land to Olroyd, was acting in a ministerial and proprietary capacity; in dismissing the complaint and in rendering judgment in favor of the city and against the plaintiff for costs.

In passing upon motions to strike or dismiss pleadings under the provisions of the Illinois Civil Practice Act, the rule is well settled that the material allega-

tions of fact, well pleaded, will be taken as admitted by the objector, but the conclusions of the pleader from such alleged facts are not deemed to be admitted. Therefore, in the discussion of alleged errors, the court, when considering the motions to strike or dismiss the complaint and each count thereof will, for the purpose of such motions, deem all material facts or allegations which are well pleaded to be so admitted but the conclusions of the pleader in relation thereto will not be so taken as admitted.

We hold that there is no merit in the contention of appellant that the motions of the defendant are objectionable as constituting speaking demurrers. No counter motion to strike the same or any portions thereof was filed. Various counts, by adopting numerous paragraphs of preceding counts, under the provisions of the present Civil Practice Act, not only adopted the factual recitals thereof but in some instances constituted alternative allegations. In view of the liberal construction of pleadings provided for in the present Practice Act, no prejudice appears to have resulted therefrom under the factual recitals of the complaint and we find no prejudicial error therein.

It is the primary contention of the defendant appellee that it appears from the factual recitals and allegations of the various counts of the complaint that the city was acting in a governmental capacity and not in a private or proprietary capacity in the conduct and maintenance of the park and swimming pool at the time of the commission of the wrongful act complained of.

It has been uniformly held in this State that a city or village is not liable for the tortious acts or omissions of its officers or agents, if committed while acting in a governmental capacity, unless such liability is expressly provided by statute. *Gebhardt v. Village of La Grange Park*, 354 Ill. 234, 188 N. E. 372; *Craig v. City of Charleston*, 180 Ill. 154, 54 N. E. 184; *Roumbos*

v. *City of Chicago*, 332 Ill. 70, 81, 163 N. E. 361; *Merrill v. City of Wheaton,* 379 Ill. 504, 41 N. E. (2d) 508; *Tollefson v. City of Ottawa,* 228 Ill. 134, 81 N. E. 823; *Evans v. City of Kankakee,* 231 Ill. 223, 83 N. E. 223; *Frazer v. City of Chicago,* 186 Ill. 480, 57 N. E. 1055; *Town of Odell v. Schroeder,* 58 Ill. 353; *Culver v. City of Streator,* 130 Ill. 238, 22 N. E. 810.

A city may be liable to respond in damages when such negligent acts are committed by an officer or agent acting in a private or proprietary capacity and within the scope of his duties under the doctrine of *respondeat superior.* *Roumbos v. City of Chicago, supra; Merrill v. City of Wheaton, supra; Petersen v. City of Gibson,* 322 Ill. App. 97, 54 N. E. (2d) 79. The applicable rule in Illinois concerning the liability of a city in conducting public parks, playgrounds and municipal swimming pools maintained for the public benefit, as distinguished from their maintenance for proprietary or corporate profit, has been discussed and passed upon by our Supreme Court in the case of *Gebhardt v. Village of La Grange Park, supra,* under the facts therein presented and held to be that they are so maintained and operated as a governmental function and within the rule of governmental immunity from liability for tortious acts or omissions of their officers and agents. In that case, a municipal swimming pool was operated in a public park maintained by the village beyond its corporate limits under the provisions of specific legislative acts. One Charles Smith, by direction of the chairman of the park recreation board, used a village truck in conveying children to and from the swimming pool. During inclement weather, the chief of police of said village directed Smith to use his own automobile instead of the village truck to convey the children to and from the swimming pool. On the afternoon of the day in question, while returning from the pool, Smith's car negligently collided with another car and the defendant appellant was

thereby injured. The court (p. 236) assumed from the facts so disclosed that the village was maintaining the swimming pool; that Smith was the agent of the village and that it was through his negligence that the injury occurred and thereupon discussed and passed upon the question of whether the maintenance of the swimming pool was a governmental or a proprietary function. It was pointed out by the court that "There is substantial contrariety of opinion in courts of last resort in this country on the question whether the maintenance of parks and playgrounds, swimming pools and the like, is a governmental function." This language refers not to the particular act in question but to the holding of the courts in general concerning the operation and maintenance of parks, playgrounds and swimming pools by municipalities. Therein, the learned justice has cited at length numerous cases from various State jurisdictions holding opposite views on the above question and the Supreme Court adhered to the doctrine under the factual situation presented therein, that the maintenance of such public parks, playgrounds and swimming pool by the village was a governmental function and fell within the rule of law granting immunity to the municipality from civil liability for the torts of its officers or agents in the exercise of such governmental function, on the ground that the same affects general public health and recreational activities, the exercise of which powers is optional with a municipality. It is there said that the facts of each case determine the question of whether or not the municipality acts in a governmental or proprietary capacity; that such function in nowise partakes of the nature of a corporate business or undertaking for profit but is by its nature a public benefit; that the municipal purpose in providing such means of recreation and health differs widely from that found in conducting a business enterprise for private gain; that among the aims of government are those of fostering

and promoting health, comfort, recreation and sanitary conditions for the benefit of the public, and unless specifically limited to certain classes of persons or to citizens of the village itself, such benefit extends to the public generally.

The municipal swimming pool in the instant case was operated and maintained for the use of the general public. The fact that a fee is charged for its use does not destroy its character as a public place of recreation and health. The courts so held in the *La Grange Park* case, *supra;* in *South Park Com'rs v. Montgomery Ward & Co.,* 248 Ill. 299, 93 N. E. 910, and in the case of *Carstens v. City of Wood River,* 344 Ill. 319, 176 N. E. 266, which latter case involved a swimming pool and playgrounds not constructed and maintained under any specific act of the legislature but built with donated funds and operated by the municipality under the provisions of a city ordinance.

Under the factual situations presented in certain cited cases from foreign jurisdictions, the liability of municipalities for the negligent acts of its agents in the conduct of governmental functions has been asserted. While there is respectable authority for that contention, Illinois has not, either as a matter of principle or of public policy seen fit to adopt and apply the maxim of *respondeat superior* in that class of cases. When an officer or agent of a city is charged with a public duty or service, no action lies against the city for the negligent discharge of duties of a governmental nature, unless such right of action is expressly given, and the maxim *respondeat superior* has, therefore, no application. Dillon, 1st ed. sec. 774; *Merrill v. City of Wheaton,* 379 Ill. 504; *Wilcox v. City of Chicago,* 107 Ill. 334. In the latter case, wherein it was held that a city is not liable for the negligence of its officers or employees connected with the maintenance and operation of its fire department, it was said by the court concerning the nonliability of cities in that class of cases (p. 339) that ''In favor of the doctrine, it

may be that an additional, if not more satisfactory, reason for its adoption and rendering it an exception to the general rule may be found in public policy."

In the case of *Tollefson v. City of Ottawa,* 228 Ill. 134, it was held that a city has power, under cited provisions of the Cities and Villages Act, to maintain a hospital, either as a charity or in the exercise of its police power, as a means to promote the general health and welfare, and in neither case is it liable under the doctrine of *respondeat superior,* for the negligent acts of the employees connected with the hospital; that a city does not possess power to maintain a hospital for revenue in its private or proprietary capacity and cannot be made liable for the negligence of persons employed about the hospital, even though the municipal authorities are unlawfully conducting the hospital for revenue.

Police regulations include ordinances passed for the purpose of securing the safety, welfare and good order of the public, and persons charged officially with the execution and enforcement of such ordinances are engaged in the performance of a public duty, and the city, under whose authority they act, is not liable for injuries negligently caused by them in the performance of such duties. *Frazer v. City of Chicago,* 186 Ill. 480; *Roumbos v. City of Chicago,* 332 Ill. 70; *Town of Odell v. Schroeder,* 58 Ill. 353; *Craig v. City of Charleston,* 180 Ill. 154.

In the case of *Evans v. City of Kankakee,* 231 Ill. 223, it was held that it is a proper exercise of the police power for a city to erect and maintain a jail, and it is not liable for the wrongful acts or negligence of its officers and employees in the management thereof or the detention therein of a person having small-pox, whereby persons living or working near such city jail contracted the disease.

The nonliability of a municipality for the tortious conduct of its officers or servants in the performance of a governmental function is further well illustrated

by the case of *Craig v. City of Charleston, supra,* wherein a special policeman, upon a day when large numbers of vehicles and persons were present upon the streets, was appointed by the mayor to aid in the control of traffic. The officer, who was known to have been of a vicious, excitable and combative temperament, indulged in an altercation with another person during which he violently assaulted, struck and destroyed the eyesight of one eye of such person. The Supreme Court, in discussing the nonliability of the city for such tortious conduct of the special officer applied the rule of nonliability to the facts presented and as a matter of law denied the right of recovery to the injured party as against the city. The alleged negligent failure of the city to furnish proper and effective police protection against the negligent or wrongful injury of its patrons while conducting a municipal swimmining pool for the use of the general public is within the excercise of a governmental function whereunder no express statutory liability of the city for the negligent act of its officers or agents is created and therefore the maxim of *respondeat superior* has no application under the facts and circumstances presented and set forth in the various counts of the complaint herein.

We are further of the opinion that not only the weight of authority in this country, but likewise the better reasoning, followed by the courts of review of this State, supports the doctrine that in the absence of a statute imposing such liability, a city or village maintaining a municipal swimming pool and recreational grounds or park for the use and benefit of the public is not pecuniarily liable for the wrongful or negligent acts of commission or omission of its officers or servants in the discharge of their duty relating to that particular governmental function. The above rule concerning the maintenance and conduct of swimming pools and recreational grounds or parks is not confined alone to that branch of the public who reside within

the city but applies equally to members of the public in general who may see fit, as invitees, to take advantage of or enjoy such privileges. *Gebhardt v. Village of La Grange Park*, 354 Ill. 234; *Carstens v. City of Wood River*, 344 Ill. 319.

Nothing in the condition of the lake or pool or its maintenance showing any negligent or unsafe condition of the physical properties connected with the park or its maintenance is alleged or shown to exist, nor do the factual conditions set forth, as we view them, state a cause of action based upon the pleader's conclusion therefrom that the presence of Olroyd constituted a nuisance knowingly maintained by the City of Hillsboro. *Craig v. City of Charleston, supra.* In the latter case, the language of this court as reported in 78 Ill. App. 312 was adopted *verbatim* by the Supreme Court in affirming said opinion (180 Ill. 154, 156, 54 N. E. 184). The contention of appellant therein that the presence of the special traffic policeman of known dangerous propensities in directing public traffic on the street constituted an actionable nuisance and obstruction on the street was directly presented to and passed upon by both courts of review in the following language: ''Appellant further contends that the placing of Apgar in the street and in control of it was the creation of a nuisance, upon which ground it is liable, —in fact, his chief contention is that he became thereby an obstruction in the street,—and cites a long list of authorities in support of the proposition that it is the duty of a city to keep its streets free from obstructions, and a failure in that regard will render it liable for injuries caused thereby. We cannot regard a human being in the exercise of police powers as an obstruction, in the sense contemplated by the unquestioned doctrine announced by those cases.'' In the instant case, we likewise hold under the facts alleged, that the contention or conclusion of the plaintiff that the presence and known condition of Olroyd at his con-

cession, followed by his wrongful acts as alleged, constituted actionable grounds against the city for the maintenance of a dangerous nuisance upon its premises, is without merit. The trial court properly sustained the motions striking the counts which undertook to charge the defendant with the maintenance of a nuisance proximately resulting in the alleged injuries and damages complained of. We further hold that the cited cases wherein the keeping of a vicious dog by an individual with knowledge of its dangerous propensities (*Klatz v. Pfeffer,* 333 Ill. 90) was held to create a right of action in an invitee injured by said dog, to be inapplicable to the facts and issues appearing herein; nor do we deem the doctrine announced in the cited Texas case (*Wiggins v. City of Ft. Worth* (Tex. Com. App.), 4 S. W. (2d) 761) wherein an eight year old child was injured by a dangerous bear which was insecurely confined in a municipal zoo, or the similar cited cases involving injuries by vicious and dangerous animals, to be applicable to or controlling under the factual situation presented in this case. Moreover, the doctrine adhered to in the *Wiggins* case, *supra,* insofar as it affects municipal liability, is not in accord with the rule adopted by the courts of Illinois.

Under the facts disclosed and well pleaded in the complaint as amended and the additional counts thereof, we hold that the trial court did not err in allowing the motions of defendant appellant to strike the complaint and in entering judgment against plaintiff in bar of suit and for costs.

Finding no reversible error in the record, the judgment of the circuit court of Montgomery county is affirmed.

*Judgment affirmed.*