(No. 30131.

Rebecca Gravander, Appellee, *v.* The City of Chicago, Appellant.

*Opinion filed March 18, 1948.*

Benjamin S. Adamowski, Corporation Counsel, (L. Louis Karton, Louis H. Geiman, and Adam E. Patterson, of counsel,) all of Chicago, for appellant.

HARRY S. POSNER, and JOSEPH D. RYAN, (ARTHUR RYAN, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff, Rebecca Gravander, appellee here, filed suit in the circuit court of Cook County against the City of Chicago for injuries sustained through the alleged negligence of defendant's employee in the operation of a truck owned and used by the city in the collection of garbage. The cause was tried by a jury which returned a verdict for the plaintiff in the sum of $2000. Motions for judgment notwithstanding the verdict and for a new trial being overruled, judgment was entered on the verdict for this amount. On appeal to the Appellate Court, the judgment of the lower court was affirmed and, leave to appeal being granted, the cause is now before this court for determination.

The record discloses that on the night of September 9, 1942, around 10:20 o'clock, the appellee was riding in the back seat of her automobile which was being driven by her son, George Gravander. The car was traveling west on One Hundred Fifteenth Street in the city of Chicago, straddling the north rail of a single streetcar track running east and west on said street. The garbage truck belonging to the city was traveling east on said street straddling the south rail. When the two cars reached the intersection of One Hundred Fifteenth Street and Indiana Avenue the collision occurred which resulted in the damages as claimed.

The sole question presented is whether the city of Chicago was exercising a governmental function in the collection and disposition of garbage, or whether it was engaged in a proprietary function and therefore subject to tort action.

It is urged by appellant that the city of Chicago, in the collection and disposition of the garbage of the city is acting as the agent of the State for the prevention and

suppression of disease as a public-health measure, and is rendering it service under the police power delegated by the General Assembly, and that such service is therefore a governmental function. It is further urged that the overwhelming weight of foreign authority holds with the Illinois decisions that, under the police power imposed upon it by the legislature, a municipality, in the collection and disposal of garbage is performing a governmental function in the interest of public health for the prevention and suppression of disease.

On the other hand, the appellee contends that in the collection and disposal of garbage, the city of Chicago is exercising a corporate as distinguished from a governmental function and is liable for the negligent operation of its garbage trucks. And, further, in the disposal of sewage, which has a much more intimate relationship to public health than the collection of garbage, the settled law of this State is that the municipality is liable for the torts of its servant.

To attempt to point out the divergent views in the many cases cited in the briefs of the parties to this lawsuit would unnecessarily extend this opinion and would rather present further confusion and conflict. It is safe to say the line between municipal operations that are proprietary and therefore a proper subject of suits in tort, and those that are governmental and therefore immune from such suits, is not clearly defined. Powers and functions held to be governmental or public in one jurisdiction are sometimes held to be corporate or private in another, and it has often been said that it is impossible to state a rule sufficiently exact to be of much practical value in deciding when a power is public and when private. As has been said in the case of *Trenton* v. *New Jersey*, 262 U.S. 182, 43 Sup. Ct. 534, "The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class. It originated

with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations."

It is urged by the appellant that this court has held in the case of *Consumers Co.* v. *City of Chicago,* 313 Ill. 408, that the collection, removal and disposal of garbage and other noxious and unwholesome substances accumulating within its limits is a sanitary measure exercised by the city for the promotion of the public health; that what was said by the Appellate Court in the cases of *Wasilevitsky* v. *City of Chicago,* 280 Ill. App. 531, and *Schmidt* v. *City of Chicago,* 284 Ill. App. 570, is contrary to the holding in the *Consumers case* and indicates a misconception by the Appellate Court of the rule of law which this court there laid down, and that such holding should specifically be overruled.

From an analysis of the *Consumers case* we hardly see how it could reasonably be said that it is controlling in view of authority which holds to the contrary, and under the facts and circumstances as presented in the instant case. In the *Consumers case* the court did not have under consideration the liability of the municipality for the negligence of a driver of its garbage truck. The proceedings there presented the question of the validity of an ordinance wherein a taxpayer sought to restrain the purchase by the city of land to be used as a garbage dump, and it was held that the purchase could not be enjoined because the city had the power to dispose of its garbage and to acquire land for that purpose. While it was said there that the function was the exercise of a police power for the preservation of the public health, it was also recognized that the duty to remove garbage, ashes and waste originating on one's premises rests primarily on such property owner, a duty which the city may perform if it desires. The facts here which raise this question are entirely different from

the facts involved in that case, and in later cases the question is presented in an entirely different light. In the case of *Johnston* v. *City of Chicago*, 258 Ill. 494, we said: "A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner. *City of Chicago* v. *Seben*, 165 Ill. 371; 4 Dillon on Mun. Corp. (5th ed.) sec. 1741."

Section 23-17 of the Cities and Villages Act is as follows: "Care of streets and public ground.) To regulate and prevent the depositing of ashes, offal, dirt, garbage, or any other offensive matter in, and to prevent injury to streets, alleys, or other municipal property." Ill. Rev. Stat. 1947, chap. 24, par. 23-17.

Section 143 of the Roads and Bridges Act is as follows: "It is hereby declared unlawful for any person to deposit in a public road weeds, trash, garbage or other offensive matter or any broken bottles, glass, boards containing projecting nails or any other thing likely to cause punctures in the tires of automobiles or motor vehicles; and any person so offending shall be liable to a penalty of not less than three dollars nor more than ten dollars: Provided, however, that this section shall not apply to proper deposits of harmless materials made in good faith and in a proper manner to repair the roads." Ill. Rev. Stat. 1947, chap. 121, par. 156.

It would seem from this that the city is directed in the care of its streets and public grounds to act in its corporate capacity. We think that the depositing of offal, dirt, trash, etc., might bear some relation to the public health along with garbage. To attempt a distinction between garbage in its restricted sense, and rubbish, trash and refuse is without merit, as they all come within the class of offensive matter, the deposit of which the municipality may regulate

and disposition of which is a corporate function as distinguished from a governmental duty.

In the case of *Roumbos* v. *City of Chicago,* 332 Ill. 70, suit was brought for the death of a child whose clothing had caught fire from a burning pile of trash which a street sweeper had set on fire and negligently failed to watch. The court, quoting from 1 Beach on Public Corporations, sec. 261, there said: "In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for purposes essentially private would be liable." It was contended in the *Roumbos case* that the city was acting under the police power for the preservation of public health by causing the streets to be cleaned, but the court rejected this argument on the ground that street cleaning was a matter primarily of local concern and that its incidental relation to public health did not convert this corporate function into a governmental function. As was said in *Schmidt* v. *City of Chicago,* 284 Ill. App. 570, "In so far as we know, government as an attribute of its sovereignty never assumed the removal and disposition of garbage throughout the State at large. Such always has been, and, on farms and in the sparsely settled communities of the State, still is essentially and primarily a work that is performed by private citizens. However, as more populous centers developed, it became impractical in most cases for private citizens to properly attend to this function and it became necessary for the municipalities to assume it on account of the complexity of life and conditions peculiar to such municipalities. It is clear upon principle and authority that the city of Chicago in the collection and removal of the garbage of its citizens acts in the discharge of a special

power granted it by the legislature, in the exercise of which it is a legal individual, as distinguished from its governmental function when it acts as a sovereign, and the fact that the discharge of this duty might incidentally benefit the public health does not make the removal of the garbage a public function."

We think there is much logic and reasoning in the above rule. It is true there is some authority in other States that have held to the contrary and it has been said the fact that States have not been accustomed to collect and dispose of garbage and rubbish does not show that such acts are not done for the State or for the benefit of the public. We think, however, the better rule is that under conditions and facts as presented in this case, the collection and removal of garbage is a corporate and not a public function. We are not unmindful, as we have heretofore pointed out, that the division or classification of these functions is far from being well defined, and is in many instances vague and indefinite, and much confusion prevails. For this reason the courts have frequently said that the only thing that can be done is to determine each case on its own particular facts. The mere fact that the public at large might benefit indirectly therefrom is not sufficient to make the function a governmental one, for almost all affairs of purely local concern produce some indirect results on the general safety, health, and welfare. If the function appears to be largely local or corporate in nature the city cannot, and should not, escape liability merely because the act might, in some general way, also relate to a function of the government. (*Roumbos* v. *City of Chicago,* 332 Ill. 70.) We have carefully examined all the cases cited in the briefs of appellant and appellee, and from the facts as disclosed by this record we do not think the appellant was immune from tort liability.

Appellee contends, and cites numerous cases which are, in the main, from other States, that considerations of

388

public policy require the abandonment of the doctrine of municipal immunity for governmental functions, at least for torts committed in the operation of the city's motor vehicles, while appellant submits that the legislative action in these fields alone is a clear indication of the path which should be pursued in order to obtain a determination of municipal immunity from tort liability in the exercise of a governmental function, and that if the immunity is to be removed it lies with the legislature. Under our views heretofore expressed, it is unnecessary to enter into a discussion of this proposition.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*